**[J-77-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 8 MAP 2014 |
| | : |
| Appellee | : Appeal from the Order of Superior Court at |
| | : No. 1893 EDA 2011 dated August 30, |
| | : 2013 affirming the Judgment of Sentence |
| v. | : of the Northampton County Court of |
| | : Common Pleas, Criminal Division, at No. |
| | : CP-48-CR-0003344-2009 dated |
| JACOB MATTHEW CHRISTINE, | : November 24, 2010. |
| | : |
| Appellant | : ARGUED:   September 9, 2014 |

**OPINION**

**MR. JUSTICE EAKIN**                                      **DECIDED:   October 27, 2015**

An equally divided en banc panel of the Superior Court[1] resulted in affirmance of appellant's judgment of sentence for aggravated assault, 18 Pa.C.S. § 2702(a)(1), and recklessly endangering another person (REAP), id., § 2705.[2]   The trial court summarized the facts:

> The convictions resulted from an incident that occurred in Northampton County Prison (NCP) on June 8, 2009.   On that date, [appellant] and the victim, Thomas Mis[s]ero, were inmates in NCP when a confrontation between the two men occurred in [appellant]'s cell in Unit B-2.   The cell housed 8 inmates in four rows of bunk beds.   While in [appellant]'s cell, [appellant] was alleged to have slashed Mr. Mis[s]ero's neck and ear with a razor blade.   Immediately after the attack, corrections officers searched

---

[1] Then-President Judge Stevens did not participate in the consideration or decision of the en banc decision below.

[2] Appellant was found not guilty of attempted murder, id., §§ 901(a), 2502(a).

[appellant]'s cell. Only one weapon, a shank, was found in the cell.[3] It was hidden within [appellant]'s bed.

Trial Court Opinion, 4/26/11, at 1-2.

Appellant filed a motion in limine to exclude the shank from evidence, arguing it was irrelevant and would cause undue prejudice by confusing the jury, because the Commonwealth agreed the shank was not used in the attack. N.T. Trial, 10/5/10, at 13. The trial court ruled the shank admissible under multiple theories. The court first stated the shank was admissible under the similar-weapon exception[4] because it showed appellant had "access to a weapon and that he had the ability to fashion a homemade weapon from objects in the prison." Trial Court Opinion, 4/26/11, at 7; see also id., at 6-7 (discussing similar-weapon exception). Additionally, the court found the shank was relevant because it "tend[ed] to show [appellant] had knowledge and familiarity with prison-made weapons and could conceal them in his prison cell … [and] to rebut [appellant]'s assertion that he was unarmed and acted in self-defense." Id., at 8. The court found the shank's probative value outweighed its prejudicial effect and, therefore, admitted it into evidence. Id.

---

[3] The "shank" was an 18- to 20-inch rod from a metal bookshelf, "with a sharp point and a handle wrapped around it, which is a piece of cloth wrapped real tight so they can have a grip on it." N.T. Trial, 10/6/10, at 38. The Commonwealth conceded the shank was not used in the attack. See, e.g., N.T. Trial, 10/5/10, at 13 ("[The shank] was not the weapon used in this incident. … We believe a razorblade was used, no razorblade was found. Right after the incident they searched the [appellant]'s cell, what they found was a shank. The Commonwealth intends to introduce the shank even though we do not believe that that is the instrument that was used.").

[4] The similar-weapon exception, discussed infra, permits the introduction of a weapon not "specifically linked" to the crime if the Commonwealth "lay[s] a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." Commonwealth v. Lee, 662 A.2d 645, 652 (Pa. 1995) (citation omitted).

Appellant filed another pre-trial motion seeking to admit into evidence Missero's post-attack simple-assault conviction.[5] He argued Missero's conviction was relevant to his self-defense claim because the conviction demonstrated Missero's violent propensities and that he was the initial aggressor. The trial court denied the motion because, as the events leading to Missero's simple-assault conviction occurred after the jailhouse attack, "nothing about the timing or nature of the charges []could establish Mis[s]ero's reputation for violence at the time of the [attack]." Id., at 11-12.

At trial, appellant testified he was reading on his cot when one of his cellmates invited Missero inside. N.T. Trial, 10/6/10, at 44-45. Appellant stated the cellmate and Missero argued about a debt, and the conversation escalated and became confrontational; appellant tried to leave the cell, but Missero was standing in the doorway. Id., at 45. Appellant testified Missero threw a cup of hot coffee at him and a struggle ensued, during which punches were exchanged. Missero produced a razorblade; appellant stated he disarmed Missero, retrieved the razorblade, and accidently may have cut Missero as he left the cell. Id., at 46, 49. The razorblade was never found.

A jury convicted appellant of aggravated assault and REAP. The trial court sentenced appellant to nine to 20 years imprisonment for aggravated assault and a

---

[5] Almost 11 months after the attack, Missero, who was released from prison, was arrested for domestic violence. The prosecutor summarized the incident as follows:

> [On] May 1st of 2010, Nazareth Police were called to the American Hotel in Nazareth for a report of an assault. Thomas Missero was outside and his girlfriend was there, Melissa Miller. She claimed that [Missero] had grabbed her and had pushed her. She had minor damage to her ear as a result of falling, I guess, from the push, and that he had threatened her.

N.T. Trial, 10/5/10, at 27. On June 24, 2010, Missero pled guilty to simple assault and REAP. Trial Court Opinion, 4/26/11, at 11.

concurrent one- to two-year sentence for REAP, the entire sentence running consecutive to his current sentence.

Appellant appealed, and a divided three-judge panel of the Superior Court reversed, holding the shank was properly admitted but finding error in refusing to allow appellant to question Missero about his post-attack conviction for simple assault. Commonwealth v. Christine, No. 1893 EDA 2011, unpublished memorandum at 6, 10 (Pa. Super. filed April 24, 2012) (withdrawn). The Superior Court granted the Commonwealth's application for reargument en banc. See Pa.R.A.P. 2543. On reargument, an equally divided en banc panel affirmed the trial court. Commonwealth v. Christine, 78 A.3d 1, 2 (Pa. Super. 2013) (en banc) (per curiam). All eight judges agreed, albeit for different reasons, the trial court did not abuse its discretion by excluding the post-trial conviction. [6] The court was evenly divided regarding admissibility of the shank.

The OISA held that even though it was not used in the attack, the shank demonstrated appellant's familiarity with and ability to fashion a homemade weapon similar to the one used in the attack. The OISA noted the razorblade and the shank both had the "distinctive characteristic" of having "'cloth or tape at the end of the instrument in order to have a handle on it.'" Id., at 8 (Mundy, J., OISA) (citation

---

[6] The Opinion in Support of Affirmance (OISA) reasoned Missero's subsequent conviction was inadmissible because that "offense is not 'similar in nature' to the events that [a]ppellant alleged transpired [during the attack]." Id., at 5 (Mundy, J., OISA) (quoting Commonwealth v. Mouzon, 53 A.3d 738, 741 (Pa. 2012)) (citing N.T. Trial, 10/6/10, at 45-47 (stating Missero threw hot cup of coffee on appellant and punched him multiple times)). The Opinion in Support of Reversal (OISR) opined "the only relevant time period for purposes of proving a victim's … character is the time period up until the occurrence of the confrontation[,]" and therefore, "Missero's subsequent conviction for an event that transpired after the prison incident should not be used 'to retroactively establish [his] character' at the time of the incident." Id., at 11-12 (Ott, J., OISR) (emphasis and alteration in original) (quoting Trial Court Opinion, 4/26/11, at 13).

omitted). The OISA reasoned that while a generic razorblade is not unique, "it is the intentional and specific modification of the razor and the bookcase's metal rod into makeshift weapons[] that makes both of them distinctive … [, and it tends to show appellant] 'had the ability to fashion a homemade weapon from objects in the prison.'" Id., at 8-9 (emphasis in original) (citations omitted).

The OISR, citing Commonwealth v. Robinson, 721 A.2d 344 (Pa. 1998), and Commonwealth v. Marshall, 743 A.2d 489 (Pa. Super. 1999), believed the shank was irrelevant because "there was no dispute that [it] was not the weapon used in the fight[,] there was testimony … that razor blades were readily available to inmates at the prison[, and] the shank did not corroborate or rebut any testimony." Christine, at 13 (Ott, J., OISR). The OISR also disagreed that appellant's self-defense claim was rebutted by a different weapon having been found in his bed. Id., at 13 & n.6 (citing Commonwealth v. Williams, 58 A.3d 796, 801 (Pa. Super. 2012)). Moreover, because the Commonwealth's case depended largely on credibility determinations, the OISR concluded the error was not harmless. Id., at 15-16.

We granted allowance of appeal to determine:

(1) Is a conviction for assault, which occurs subsequent to the incident at issue in a criminal trial, admissible to prove the allegedly violent propensities of the victim, where self-defense is asserted and where there is an issue raised as to who was the aggressor?

(2) Did the [t]rial [c]ourt commit error of law or abuse its discretion when it permitted the Commonwealth to admit a "shank" as physical evidence, as well as testimony regarding said shank, in the course of the jury trial in the instant matter?

Commonwealth v. Christine, 86 A.3d 831 (Pa. 2014) (per curiam); see also 42 Pa.C.S. § 724(a).

Both issues concern the admissibility of evidence, which rests within the sound discretion of the trial court, and therefore, we "will reverse [the] trial court's decision …

only if the appellant sustains the 'heavy burden' to show that the trial court has abused its discretion." Commonwealth v. Bryant, 67 A.3d 716, 726 (Pa. 2013) (citations omitted). The following principle leads to our affirmance of the trial court's rulings:

> It is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

Id. (alteration in original) (citation and internal quotation marks omitted).

Only relevant evidence is admissible at trial. Pa.R.E. 402. Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence. Id., 401. Even if relevant, however, evidence may be excluded "if its probative value is outweighed by … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Id., 403. Appellant's claim of inadvertent injury while exercising the right of self-defense is pertinent to both rulings. As to the first issue, when a defendant asserts a claim of self-defense:

> [E]vidence of the victim's prior convictions involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/propensity evidence, as indirect evidence that the victim was in fact the aggressor.

Mouzon, at 741 (citation omitted). The defendant need not have knowledge of the victim's prior conviction if it is being offered to prove the victim was the aggressor. Commonwealth v. Amos, 284 A.2d 748, 752 (Pa. 1971). Thus, evidence of the victim's prior conviction is admissible if the trial court determines it is "similar in nature and not too distant in time.…" Mouzon, at 741 (citation omitted).

Relying on Commonwealth v. Beck, 402 A.2d 1371 (Pa. 1979),[7] appellant first argues the lower courts erred in looking to the facts behind the subsequent conviction to determine whether it was "similar in nature" to the jailhouse attack, as "an assault conviction necessarily implies violent propensity." Appellant's Brief, at 13. In regard to the not-too-distant-in-time element, appellant avers the fact that case law refers to a conviction preceding the present incident does not necessarily limit the admissibility of victim's convictions to prior convictions. Id., at 15 ("Nowhere in either [Beck or Amos] did this Court consider whether a conviction must occur before or after the incident on trial in order to be relevant to violent propensity."). He contends that because Beck and Amos were murder cases, where it was tautologically impossible for the victim to commit a subsequent offense, the prior-conviction language in those opinions is dicta, and thus, precedent does not bar subsequent convictions from being admissible. Id., at 15-16. Therefore, according to appellant, the reasoning of those cases logically applies to subsequent convictions and the trial court erred by "categorically refusing" to admit any subsequent conviction. See id., at 16-17. Finally, appellant submits the trial court's error was not harmless because "the only contested issue at trial was which party was the aggressor[.]" Id., at 18.

The Commonwealth responds by arguing any conviction subsequent to the incident at issue can never be probative that the victim was the aggressor during a previous altercation. Commonwealth's Brief, at 8; see also id., at 6-7 (stating no case

---

[7] In Beck, this Court held it was error for the trial court to exclude the victim's three-year-old prior convictions for assault and battery. We stated, "When the prior conviction is for assault and battery, there is no need to compare the facts. Any difference is irrelevant. A conviction for assault and battery necessarily implies a character involving aggressive propensities." Id., at 1373.

law supports "position that subsequent convictions of the victim may be admitted to show alleged violent propensities in a prior conflict" and noting this Court's precedent "specifically refers to 'prior convictions' and 'past crimes'" (emphasis in original) (quoting Mouzon, at 741)).[8] The Commonwealth asserts logic does not warrant extending the rule to subsequent convictions because "numerous intervening factors … could have affected the victim's character and propensities going forward." Id., at 8-9.

We hold the Superior Court did not err in determining the trial court acted within its discretion by excluding Missero's subsequent simple-assault conviction. The "decision in each case as to similar nature and remoteness … rests within the sound discretion of the trial judge." Amos, at 752. While we disagree with appellant's position that the trial court abused its discretion, we do not endorse the claim that a subsequent conviction can never be probative and admissible. Proximity in time is a factor, as is similarity of facts. Here we have 11 months between events, but a strikingly disparate factual scenario.[9] See Weakley, at 1190 (stating, in context of using prior bad acts to identify defendant, "the importance of a temporal nexus between crimes declines as the

---

[8] The Commonwealth argues, while there is a dearth of case law dealing with the admission of subsequent offenses "in any context …, in those cases where courts have allowed [such] evidence … to be admitted at trial, [it] has come in under the exceptions listed in [Pa.R.E.] 404(b)(2) and it has related to the defendant, not the victim." Id., at 7-8 (citing Commonwealth v. Reid, 626 A.2d 118, 121 (Pa. 1993); Commonwealth v. Weakley, 972 A.2d 1182, 1188 (Pa. Super. 2009); Commonwealth v. Wattley, 880 A.2d 682, 686-87 (Pa. Super. 2005)).

[9] In this regard, we overrule Beck insofar as it stands for the bright-line rule that all assault convictions are sufficiently similar to demonstrate the victim's violent propensities. See Beck, at 1373. Instead, trial courts may determine whether the facts are sufficiently similar on a case-by-case basis, and the trial court here did not err in doing so.

similarity of the crimes increases"); see also N.T. Trial, 10/6/10, at 46 (appellant testifying Missero started fight by throwing hot cup of coffee). We uphold the ability of the trial court to duly consider all things appropriate, and find the court here did not abuse its discretion in excluding Missero's conviction. We "reaffirm our confidence in our trial judges to oversee the presentation of evidence 'so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom.'" Bryant, at 726 (quoting Commonwealth v. Eichinger, 915 A.2d 1122, 1139 (Pa. 2007)).

Appellant's second issue challenges the admission of the shank found hidden in his bed. Appellant first argues the trial court erred by ruling it admissible under the similar-weapon exception because the Commonwealth conceded the shank did not cause Missero's injuries. See Appellant's Brief, at 23 (quoting Lee, at 652). Instead, the Commonwealth contends the shank was admissible "to show that [a]ppellant 'had possession and control of a weapon similar to the one used to commit his crimes.'" Commonwealth's Brief, at 14 (quoting Williams, at 801).

A weapon not "specifically linked" to the crime is generally inadmissible; however, the fact "the accused had a weapon or implement suitable to the commission of the crime charged … is always a proper ingredient of the case for the prosecution." Robinson, at 351 (alteration in original) (citation and internal quotation marks omitted). "Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence." Commonwealth v. Williams, 640 A.2d 1251, 1260 (Pa. 1994) (citing Commonwealth v. Coccioletti, 425 A.2d 387, 390 (Pa. 1981)). "The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." Lee, at

652 (citing Commonwealth v. Thomas, 561 A.2d 699, 707 (Pa. 1989) ("If a proper foundation is laid, the weapon is admissible where the circumstances raise an inference of the likelihood that it was used.")).

The cases cited deal with weapons that might have been used. Possession of a handgun may be relevant even if the particular gun possessed cannot be proven to be the one used in the crime. That it was possessed may allow the inference it could have been used. Here, however, the exception is not in play, as the shank was admittedly not used in the pertinent assault. The theory of the exception is that the weapon possessed could have been the weapon used — that simply is not the case here, and admission under the similar-weapon exception was error.[10] To the extent that cases

---

[10] This Court's entry into the similar-weapon exception was in Commonwealth v. Ford, 301 A.2d 856 (Pa. 1973), where police believed a 12-inch knife found in the defendant's home was the murder weapon. The victims were stabbed with "a kitchen knife about 12 inches long," and the medical examiner testified the victims' "wounds were caused by a knife with a seven to seven and one-half inch blade." Id., at 857. However, the knife at trial was never positively identified as the one used, and the medical examiner was unable to link it to the crime. Id. We held the knife was admissible because there was a foundation to "'justify an inference of the likelihood of [the knife] having been used….'" Id., at 858 (quoting United States v. Ramey, 414 F.2d 792, 794 (5th Cir. 1969) (per curiam)). Accord Commonwealth v. Edwards, 903 A.2d 1139, 1156-57 (Pa. 2006) ("[T]he Commonwealth need only lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." (citation omitted)); Lee, at 652 (same); Thomas, at 707 (same); Commonwealth v. Yount, 314 A.2d 242, 249 (Pa. 1974) ("The knife [found on defendant and admitted at trial] was of a kind that could have inflicted the wounds, even though the prosecution was unable conclusively to demonstrate that the particular knife was the weapon used." (emphasis added)); Commonwealth v. Johnson, 615 A.2d 1322, 1334 (Pa. Super. 1992) (citing Commonwealth v. Fromal, 572 A.2d 711, 724 (Pa. Super. 1990)).

Unfortunately, some appellate decisions have omitted language referring to the need for a foundation justifying an inference the weapon was used in the crime. See, e.g., Williams, 640 A.2d at 1260 (stating weapon admissible "if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime"); Williams, 58 A.3d at 801 (stating similar-weapon exception applies "where 'the accused (continued…)

affirm use of this exception strictly on the basis of similarity, without an inference they were the weapons used, we reject them.

Of course, admission on other grounds remains possible. In that regard, the trial court also found the shank relevant and admissible to demonstrate appellant's ability to fashion a homemade weapon, and to rebut his self-defense claim. Noting razorblades are regularly handed out to inmates, appellant argues "it does not take much ingenuity to put a piece of paper, tape, or cloth on one end of the blade in order to hold it. [His] ability to do so was not at issue." Appellant's Brief, at 27. However, the Commonwealth laid a foundation of the similarity between the handles on the shank and razorblade, which, as admittedly generic that may be, the trial court found demonstrated appellant's familiarity with and ability to fashion jailhouse weapons, which one cannot say is irrelevant.

Appellant claims "the shank does not rebut his assertion of self-defense except by the improper inference of guilt arising from his alleged possession of an unrelated weapon." Id. Even if another judge would have ruled otherwise, it is "'not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power.'" Bryant, at 726 (alteration in original) (citation omitted). We find the trial court's decision to admit the shank in order to rebut appellant's self-defense claim was not "'manifestly unreasonable,

---

(…continued)
had a weapon or instrument suitable to the commission of the crime charged'"); Commonwealth v. Owens, 929 A.2d 1187, 1191 (Pa. Super. 2007) (citation omitted). But see Edwards, at 1156-57 (citation omitted); Lee, at 652; Thomas, at 707; Yount, at 249; Ford, at 858; Johnson, at 1334 (citation omitted). This exception requires evidence sufficient to allow such an inference. It is not present herein.

or the result of partiality, prejudice, bias[,] or ill-will.'" Id. (citation omitted). Therefore, the trial court did not abuse its discretion or commit reversible error by admitting relevant evidence, and the OISA did not err by ruling the shank was relevant under alternative theories of admissibility.

Order affirmed; jurisdiction relinquished.

Former Chief Justice Castille and Former Justice McCaffery did not participate in the decision of this case.

Messrs. Justice Baer and Stevens join the opinion.

Madame Justice Todd files a concurring opinion.

Mr. Chief Justice Saylor files a dissenting opinion.