J-S56018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GORDON CHARLES WILLIAMS | |
| Appellant | No. 45 MDA 2016 |

Appeal from the Judgment of Sentence December 14, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002854-2014

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 19, 2016**

Appellant, Gordon Charles Williams, appeals from the judgment of sentence entered December 14, 2015, in the Court of Common Pleas of Berks County, following his conviction of Rape of a Child, Indecent Assault, Corruption of Minors, Endangering the Welfare of Children and Indecent Exposure.[1] No relief is due.

The trial court summarized the facts of this case as follows.

> In January 2010, [B.H.] and Appellant lived at 928 Church Street in the City of Reading with four children, including eight-year-old [K.H.] ("the victim"). The other children included [T.B.], [K.H.], and [R.W.]. [R.W.] is the son of [B.H.] and Appellant,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(c); 3126(a)(7); 6301(a)(1); 4304(a)(1); and 3127(a), respectively.

who were engaged to be married and had moved in together in 2005.

On January 8, 2010, [B.H.] left work early at 2 p.m. She arrived home approximately seven minutes later, where she found the front door and deadbolt both locked. When she walked inside, all the lights were turned off. … [B.H.] did not see or hear Appellant in the kitchen, so she went upstairs. At the top of the stairs, she looked into her daughters' bedroom and saw a large, dark lump that did not look like the normal blanket she would expect to see. [B.H.] turned the light on, and she saw Appellant and [the victim] on the bottom bunk of a bunk bed. Both were naked from the waist down, and Appellant was holding [the victim's] hip up against him. [The victim] had stayed home from school because she felt sick.

[The victim] began screaming and crying and she ran to the middle of the room where her pants were laying. [B.H.] began yelling, and Appellant eventually pulled up his pants and walked down the steps. [B.H.] told [the victim] to stay in the room, and she ran down the stairs after Appellant. Downstairs, Appellant was holding [R.W.] and he said, "Daddy has to go now." [B.H.] and Appellant exchanged some physical blows, and then [B.H.] called 9-1-1 as Appellant left the home.

Officers arrived at the house to investigate. Later that day, [B.H.] took [the victim] to the hospital to be examined. Dr. Renee Riddle, a pediatrician at Reading Hospital, testified that [the victim] had some bruising on her buttocks and a tear in her hymen. One week later, the tear was healed, indicating that the tear likely occurred around the time of the initial evaluation.

Sometime that day, Appellant went to the home of Kimberly Hawley, a friend of the family. He seemed "unusual" and "nervous," and he asked for some money in order to travel to Harrisburg on a bus. Later, Kimberly received a phone call from [B.H.], who hysterically explained what had happened.

Zach Smith of the Berks County Sheriff's Department was working in the warrant division on January 15, 2010. Smith was assigned to go to 62 North Second Street in Hamburg, Berks County to serve a warrant for Appellant. After Smith had knocked and announced his presence, Appellant opened the door and then turned to walk away. Smith took Appellant to the ground and handcuffed him. Once Appellant was brought to his

feet, Smith noticed that his neck and shirt were bloody. Smith saw there was small razor on the ground.

[The victim] testified that Appellant began abusing her at age four. She remembered that detail because it began before she was potty-trained. Appellant raped her repeatedly throughout the ensuing years by putting his penis in her vagina. Appellant also would touch his penis to her mouth, which she refused. [The victim] often cried because of the physical pain, and he would insist that she be quiet. The assaults occurred in the bathroom, the laundry room, Appellant's bedroom, and [the victim's] bedroom.

[The victim] eventually revealed additional details to William Kase, then a criminal investigator with the City of Reading Police Department. [She] described Appellant's penis and stated that he had inserted his penis into her vagina on January 8, 2010 before her mother entered the bedroom.

Trial Court Opinion, 3/7/15 at 2-3 (record citations omitted).

A jury convicted Appellant of the aforementioned charges. The trial court sentenced Appellant to a term of 20 to 40 years' imprisonment.[2] Appellant filed a post-sentence motion, which the trial court denied. This timely appeal followed.

Appellant first argues that the trial court erred in denying his post-sentence motion challenging his convictions as contrary to the weight of the evidence. A challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice."

_____

[2] The trial court determined that the Commonwealth failed to meet its burden of proving that Appellant was a Sexually Violent Predator.

*Commonwealth v. Orie*, 88 A.3d 983, 1015 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014) (citation omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted), *aff'd*, 595 Pa. 1, 938 A.2d 198 (2007).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (internal quotes and citations omitted).

In support of his claim that the verdict was against the weight of the evidence, Appellant asserts that the victim's mother, B.H., coached the victim to testify against the Appellant regarding the sexual assault in order to avoid a custody battle over the couple's minor child. Appellant's claim is wholly speculative and unsupported by the evidence.

As noted, the Commonwealth established that B.H. came home on January 8, 2010, to discover Appellant in bed with the victim, both of whom

were naked from the waist down. A subsequent medical examination of the victim on the day of the incident established that she had sustained bruises to her buttocks and a tear in her hymen. Dr. Riddle testified that the fact that the tear had healed approximately one week later suggested that the tear likely occurred around the date B.H. discovered Appellant in bed with the victim. Additionally, the victim testified that Appellant had repeatedly raped her—for over four years—and stated specifically that Appellant had inserted his penis into her vagina on January 8, 2010.

In light of the overwhelming evidence presented, we find that the verdict does not in any respect shock one's sense of justice. The figure of justice is firmly rooted to her pedestal. The trial court did not abuse its discretion, and Appellant's weight of the evidence claim must fail.

Appellant lastly argues that the sentence imposed by the trial court was manifestly excessive. This claim challenges the discretionary aspects of Appellant's sentence. A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> [We] conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal

defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Appellant challenged his sentence in a post-sentence motion and filed a timely appeal. Appellant's brief also contains the requisite Rule 2119(f) concise statement. We must now determine whether Appellant's challenge to the discretionary aspects of his sentence raises a substantial question.

"A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014), *appeal denied*, 117 A.3d 297 (Pa. 2015) (citation omitted). "[W]e cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013), *aff'd*, 125 A.3d 394 (Pa. 2015) (citation omitted).

Here, Appellant claims in his Rule 2119(f) statement that the "the sentencing court did not consider the requisite sentencing factors, namely the rehabilitative needs of the defendant nor the circumstances particular to this individual case." Appellant's Brief at 8. Appellant further contends that

the trial court abused its discretion when it "ignored Appellant's request to consider other than the statutory maximum." *Id*.

"[A] generic claim that a sentence is excessive does not raise a substantial question for our review." *Christine*, 78 A.3d at 10 (citation omitted). "Additionally, this Court has repeatedly held that an allegation that the trial court failed to consider particular circumstances or factors in an appellant's case go to the weight accorded to various sentencing factors and do not raise a substantial question." *Id*. at 10-11 (citation omitted).

While Appellant argues that the sentencing court failed to consider his rehabilitative needs and the "circumstances of the case," in substance he merely argues that the court failed to sufficiently address factors of record. The sentencing court had prepared and reviewed a pre-sentence report. *See* N.T., Sentencing, 12/14/15 at 55. Where the sentencing court had the benefit of reviewing a pre-sentence report, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the

position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Hallock***, 603 A.2d 612, 616 (Pa. Super. 1992) (citation omitted). As the sentencing court in this case did have the benefit of a pre-sentence report, we must presume that he considered all relevant sentencing factors and fashioned an individualize sentence.

Based on the foregoing, we are constrained to find that Appellant's claim that the sentencing court did not adequately consider relevant factors of record fails to raise a substantial question. ***See Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1266 (Pa. Super. 2014), ***appeal denied***, 104 A.3d 1 (Pa. 2014) ("[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though necessarily encompassing the factors of § 9721, has been rejected.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2016