J-S44039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                :            PENNSYLVANIA
                                                  :
              v.                                :
                                                  :
TRAVIS A. STAMBAUGH              :
                                                  :
              Appellant          :      No. 2031 MDA 2019

Appeal from the Judgment of Sentence Entered November 15, 2019
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s):  CP-44-CR-0000310-2018

BEFORE:  BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: JANUARY 6, 2021**

Travis A. Stambaugh (Appellant) appeals from the judgment of sentence entered in the Mifflin County Court of Common Pleas following his jury trial convictions of simple assault, recklessly endangering another person (REAP), theft by unlawful taking, and receiving stolen property (RSP).[1]  Appellant contends (1) the trial court erred by denying a requested jury instruction on the justification of the use of force because the Commonwealth presented evidence of self-defense at trial, and (2) the trial court erred by not allowing Appellant to impeach a witness with previous crimes of violence and *crimen falsi*.  We affirm.

---

[1] 18 Pa.C.S. §§ 2701(a)(1), 2705, 3921(a), 3925(a).

On June 27, 2018, the Commonwealth filed an information against Appellant charging him with the crimes listed above, as well as criminal attempt—criminal homicide, aggravated assault, robbery, possession of a firearm prohibited, and firearms not be carried without a license.[2] The following facts were presented at a two-day jury trial, which commenced on September 25, 2019. Dwayne Jones (Victim) lived in an apartment located in Lewistown, Pennsylvania with his girlfriend, Tresa Walker (Appellant's mother) and others. N.T., Jury Trial, 9/25/19, at 41-42. Victim testified on April 10, 2018, he was sick and was sleeping in his bed when Appellant entered the room and woke him up. *Id.* at 45, 47-48. Appellant pushed Victim back down on the bed, grabbed Victim's phone and put it in his pocket, and took $710 from Victim's wallet. *Id.* at 51. Appellant also had a firearm in his hand, but it was not aimed at Victim. *Id.* at 52. Appellant told Victim, "I told you I'm fuckin' crazy. You are not going to fuckin' leave my mom. I'll fuckin' kill you." *Id.* at 55. Victim then testified that as Appellant said, "I'm going to shoot you," he turned his head and heard an explosion of a gun. *Id.* Victim realized he had been shot because he was bleeding from his head, ear, and nostril. *Id.* at 56-57. When questioned by police, Victim initially stated that he did not know who shot him. *Id.* at 58.

---

[2] 18 Pa.C.S. §§ 901(a), 2501(a), 2702(a)(1), (4), 3701(a)(1)(i), 6105(a)(1), 6106(a)(1).

On cross-examination, Victim admitted that his statement to police was "inaccurate" because he "knew who shot [him.]" N.T., 9/25/19, at 118. However, Victim stated he "was going to deal with the situation himself" and he intended to call one of his five brothers to "shoot him the way he shot me." *Id.* at 118. Victim explained he subsequently revealed to police that Appellant shot him. *Id.* at 121.

The Commonwealth then presented evidence, admitted as Commonwealth Exhibit 1, of the recorded interview and transcript between Appellant and the Lewistown Police after police took Appellant into custody on May 8, 2018. The relevant parts of the recording were read aloud for the jury. Appellant stated, ". . . What the fuck is wrong with [Appellant's mother], bro? This man took a fuckin' [sic] because she told me to whoop his fuckin' ass. I whooped his ass. He pulled the gun out bro." N.T., Jury Trial, 9/26/19, at 310. When questioned how Victim received a gunshot wound, Appellant explained they "fuckin' tussled over it," and [Victim] shot hisself in his fuckin' ear. . . the dumb ass shot hisself." *Id.* at 310-11. Appellant continued, "I wish I would never have put my hands on this dude, man . . . . I feel like a fuckin idiot." *Id.* at 314. Appellant also explained,

> I ain't had nothing to do with none of that shit about no gun. I punched him in his fuckin' mouth, slapped him the fuck around. He pulled a fuckin' gun out on me. I threw my weight on him, tussled with him a split second or two, popped his stupid ass self, the fuckin' idiot.

*Id.* at 315.

The Commonwealth then presented evidence, admitted as Commonwealth Exhibit 2, of a letter Appellant had written to the Disciplinary Board of the Supreme Court of Pennsylvania on September 3, 2018. The Commonwealth read a relevant portion of the letter to the jury which stated:

> "When I got [to Victim's house], my mother was pretty beat up so I went in the house to tell the man to leave and leave my mother alone. I went upstairs to the bedroom and he was sleeping on his stomach in the bed. I tapped him on the shoulder to wake him and asked him to leave. He awoke startled in a rush and grabbed a gun from under the mattress. I wasn't expecting this and I impulsively jumped on top of him and grabbed his arm to immobilize the firearm. When I did, he pulled the trigger and inadvertently shot himself. I then fled the house before he was able to recover and shoot me."

N.T., 9/26/19, at 319-20; Commonwealth Exhibit 2.

Appellant did not testify during trial, but he did recall Victim to testify for impeachment purposes. Appellant attempted to impeach Victim about his propensity for violence and *crimen falsi* convictions because Victim had testified that he was not a violent person. *See* N.T., 9/25/19, at 123. Appellant attempted to introduce numerous complaints and protection from abuse orders that Victim received spanning a period over 28 years. N.T., 9/26/19, at 346. After much discourse, the trial court ultimately decided Appellant could not introduce any complaints, but could impeach Victim about his tendency for violence with a disorderly conduct conviction in 2018 and

- 4 -

*crimen falsi* convictions of burglary and theft from 2009 and 2017.[3]  ***Id.*** at 349, 360.

Prior to closing statements, Appellant requested the trial court give a jury instruction on justification of the use of force.  The trial court denied this request.  Explaining its reasoning on the record, the trial court stated, "When [Appellant] gets there, well, the next thing you know [Victim] is pulling out a gun and . . . he shoots himself.  [Appellant] didn't touch the gun.  He had nothing to do with the gun.  So it's not even self-defense for him.  This guy shot himself.  That's the twist."  N.T., 9/26/19, at 415.  The trial court further explained,

> I'm not going to allow the justification to come in.  I have struggled with this.  It's just that I don't think on either scenario that language — when I kept reading this instruction, it wasn't fitting what we have here.
>
> It's one thing if proof comes out they were struggling, the gun, whatever, and he shot him, [Appellant].  We have never heard that.  We were never there.  And all these charges are about the bullet in [Victim's] head so that's why I'm not going to allow that.

***Id.*** at 417-18.

---

[3] The Commonwealth informed the trial court that none of these convictions would be admissible unless the court made a finding that there was evidence of self-defense.  N.T., 9/26/19, at 355.  Initially, the trial court explained, "It's coming in.  You are getting a[ jury] instruction on justification whether you like it or not."  ***Id.*** at 356.

As noted **supra**, the jury found Appellant guilty of simple assault, REAP, theft by unlawful taking, and RSP, but acquitted Appellant of all remaining charges. **Id.** at 531-33.

On November 15, 2019, the trial court sentenced Appellant to one to two years' incarceration for simple assault followed by a consecutive sentence of 16 to 60 months' incarceration for theft by unlawful taking. Appellant's convictions of RSP and REAP merged for purposes of sentencing. **See** Sentence Order, 11/15/19.

On December 16, 2019, Appellant filed a timely notice of appeal. That same day the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and he timely complied.

Appellant presents two issues for our review:

1) Did the lower court commit an error of law by failing to instruct the jury on the defense of justification?

2) Did the lower court commit an error of law by denying [Appellant's] counsel from presenting evidence of the victim's criminal background to impeach the witness[?]

Appellant's Brief at 4.

Appellant first contends the trial court erred in failing to instruct the jury on the defense of justification because the evidence presented by the Commonwealth of Appellant's recorded statement to Lewistown Police is sufficient to establish self-defense. Appellant's Brief at 13. Appellant claims the trial court initially agreed to provide the justification instruction, but later reneged and decided not to provide it. Appellant claims this error prejudiced

him and warrants an "overturning of the convictions." ***Id.*** at 14. Appellant cites ***Commonwealth v. Wilson***, 639 A.2d 281 (Pa. Super. 1994), to support his claim that a trial court's refusal to instruct the jury on self-defense is reversible error because in that case, "the defendant had testified he accidentally shot the victim while struggling to prevent the victim from shooting him." Appellant's Brief at 10.

In reviewing a trial court's denial of a jury instruction, our standard of review is as follows:

> "[O]ur standard of review when considering the denial of jury instructions is one of deference — an appellate court will reverse a [trial] court's decision only when it abused its discretion or committed an error of law." "[O]ur key inquiry is whether the instruction on the particular issue adequately, accurately, and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations."

***Commonwealth v. Cannavo***, 199 A.3d 1282, 1286 (Pa. Super. 2018) (citations omitted), *appeal denied*, 217 A.3d 180 (Pa. 2019).

Section 505 of the Pennsylvania Crimes Code states, in pertinent part:

**§ 505.  Use of force in self-protection**

**(a)  Use of force justifiable for protection of the person.—** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b)  Limitations on justifying necessity for use of force.—**

\*    \*    \*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) **the actor**, with the intent of causing death or serious bodily injury, **provoked the use of force** against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, **unless he was the initial aggressor** or is assailed in his place of work by another person whose place of work the actor knows it to be.

(2.1) Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:

(i) the person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.

(ii) the actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

(2.2) The presumption set forth in paragraph (2.1) does not apply if:

\*       \*       \*

> (iii) the actor is engaged in a criminal activity or is using the dwelling, residence or occupied vehicle to further a criminal activity. . . .

18 Pa.C.S. § 505(a), (b)(2), (b)(2.1), (b)(2.2)(iii) (emphases added).

Before self-defense may be invoked, there must be evidence presented to justify a finding of self-defense. *Commonwealth v. Webster*, 416 A.2d 491, 492 (Pa. 1980). A jury charge on self-defense must be given upon request where the jury would have a possible basis for finding self-defense. *Commonwealth v. Brown*, 421 A.2d 660, 662 (Pa. 1980).

Furthermore, "[i]f the defendant properly raises 'self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.'" *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super 2014) (citations omitted).

> While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.
>
> \* \* \*
>
> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence.

*Id.* at 787 (citations omitted); *see also* 18 Pa.C.S. § 505(b)(2)(i)-(ii).

Here the trial court reasoned, based on the evidence presented, Victim brandished the gun and ultimately shot himself. N.T., 9/26/19, at 415. Appellant never touched the gun nor had anything to do with it. Therefore, it is not self-defense.[4] *Id.* We agree.

Moreover, regardless of whether Appellant subjectively believed force was "immediately necessary," he was not entitled to a justification instruction because the evidence presented of Appellant's recorded statement with police

_____

[4] The dissent cites this evidence — Appellant's statement to police that it was the victim who brandished the gun and Appellant used force to gain control of the gun — and contends Appellant was entitled to a self-defense jury instruction. Respectfully, we disagree. Several important facts, ignored by the dissent compel a different result. First, in order to avail oneself of a self-defense charge, a defendant cannot be the aggressor. Here, it is undisputed that Appellant was the aggressor. Second, a justification defense necessarily requires an admission, by the defendant, that he shot the victim but was justified in his conduct. A self-defense charge may not be an "either/or" proposition. If a defendant claims a shooting was accidental, he cannot later claim he intentionally shot the victim in self-defense since the two versions are mutually exclusive. Since Appellant claimed an accidental shooting, this necessarily implies that he did not shoot the victim, thereby raising a credibility issue to be determined by the jury. Since the jury rejected Appellant's version of events and found him guilty of an intentional act, Appellant cannot now attempt to resurrect a self-defense where he rejected this tactic at trial and proceeded under an alternate version of events.

demonstrated he "provoked the use of force" and was the "initial aggressor."[5]

**See** 18 Pa.C.S. § 505(b)(2)(i)-(ii).  Thus, Appellant is entitled no relief.

In his second issue, Appellant avers the trial court erred by not allowing him to impeach Victim after Victim stated he was not a violent person. Appellant's Brief at 19.  Appellant argues this testimony "opened the door to confront [Victim] with evidence . . . that he is in fact a violent person." **Id.** Appellant contends Pa.R.E. 607 "permits the credibility of a witness to be impeached by 'any evidence' and . . . prior convictions and the facts underlying the numerous allegations of violence (regardless of what offenses [Victim] ultimately pled guilty to) fall squarely within [Rule 607]." **Id.** at 20.  Appellant maintains the trial court "denied his right to impeach the credibility of his accuser, which in turn denied the jury necessary means to evaluate the veracity of his testimony." **Id.**

The admissibility of evidence rests within the sound discretion of the trial court, therefore, we "will reverse [the] trial court's decision . . . only if the appellant sustains the 'heavy burden' to show that the trial court has abused its discretion." **Commonwealth v. Christine**, 125 A.3d 394, 398 (Pa. 2015) (citation omitted).  Thus, we adhere to the following principle, which leads to our affirmance of the trial court's rulings:

---

[5] "[A]n appellate court is not bound by the rationale of the trial court and may affirm on any basis if the record supports it." **Commonwealth v. Diaz**, 183 A.3d 417, 421 (Pa. Super. 2018).

It is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

Only relevant evidence is admissible at trial. Pa.R.E. 402. Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence. Even if relevant, however, evidence may be excluded "if its probative value is outweighed by . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Appellant's claim of inadvertent injury while exercising the right of self-defense is pertinent to both rulings. As to the first issue, when a defendant asserts a claim of self-defense:

[E]vidence of the victim's prior convictions involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/propensity evidence, as indirect evidence that the victim was in fact the aggressor.

The defendant need not have knowledge of the victim's prior conviction if it is being offered to prove the victim was the aggressor. Thus, evidence of the victim's prior conviction is admissible if the trial court determines it is "**similar in nature and not too distant in time**. . . ."

*Christine*, 125 A.3d at 398–99 (citations omitted) (emphasis added).

Pennsylvania Rule of Evidence 607 states:

**Rule 607. Who May Impeach a Witness, Evidence to Impeach a Witness.**

(a) **Who May Impeach a Witness**. Any party, including the party that called the witness, may attack the witness's credibility.

- 12 -

(b) **Evidence to Impeach a Witness**. The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules.

Pa.R.E. 607(a)-(b). Further, Pa.R.E. 609 states in pertinent part:

**Rule 609.     Impeachment by Evidence of a Criminal Conviction.**

(a) **In General**. For the purpose of attacking the credibility of any witness, evidence that the witness has been **convicted of a crime**, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.

(b)**Limit on Using the Evidence After 10 Years**. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) its probative value substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(a)-(b) (emphasis added).

Here, Appellant attempted to impeach Victim's credibility as to violence with numerous complaints lodged against him. These complaints spanned as far back as 1992, and involved complaints from 1999, 2000, 2007, and 2008. The trial court explained, "[It was] only looking for convictions." N.T., 9/26/19, at 346. The trial court did allow Appellant to impeach Victim with convictions involving *crimen falsi* and violence from 2009, 2017, and 2018,

but explained, "The offenses have to be kind of close, not too far away in time, and factually . . . []kind of similar." *Id.* at 351-52. The trial court correctly determined the impeachment evidence that Appellant attempted to use constituted complaints of violent behavior and not convictions. *See* Pa.R.E. 609(a)-(b)(1), (2). Additionally, the rejected complaints were more than ten years old and were not similar in nature. *See id.*; *Christine*, 125 A.3d at 399. Thus, the trial court did not abuse its discretion. *See Christine*, 125 A.3d at 397-99. Appellant is entitled to no relief.

Judgment of sentence affirmed.

Judge Nichols files a concurring statement.

President Judge Emeritus Bender files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2021