[J-64-2021] [MO: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 789 CAP |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Sentence entered on February 12, |
| | : | 2020 in the Court of Common Pleas, |
| v. | : | Westmoreland County, Criminal |
| | : | Division at No. CP-65-CR-0005539- |
| | : | 2017. Post-Sentence Motions |
| RAHMAEL SAL HOLT, | : | denied August 21, 2020. |
| | : | |
| Appellant | : | SUBMITTED: October 13, 2021 |

## CONCURRING OPINION

**JUSTICE DOUGHERTY**                                             **DECIDED: April 28, 2022**

I concur in the decision to affirm appellant's sentence of death but write separately to express my different rationale with respect to three issues.

First, I agree the evidence was sufficient to convict. The lead opinion correctly notes three of the six bullets appellant fired from close range while fleeing the pursuing officer struck the officer; two hit the officer in a part of his body unprotected by his bullet-proof vest, one of those lodged in his lung, the remaining bullet lodged in his vest. Appellant did not testify at trial. On appeal, appellant recognized "[t]he jury determined the shooter to be [appellant]" but asserted the shots were merely fired "reckless[ly]" and that the "shooter" did not "intentionally tak[e] aim at the pursuing officer." Appellant's Brief at 19-21. In my view, because the jury properly determined appellant was the shooter, his specific intent to kill was plainly evidenced by his firing six bullets at the pursuing officer from close range, at least one of which lodged in a vital part of the officer's body. The lead opinion inaptly states, "this is not a straightforward case" in which "'the nature

of the killing'" establishes the specific intent to kill by "inference [of] striking a vital body part with a bullet[.]"  Lead Opinion at 14, *quoting Commonwealth v. Rodgers*, 456 A.2d 1352, 1354 (Pa. 1983).  I am particularly unpersuaded by the suggestion a more nuanced review of the evidence of a bullet striking a vital body part is necessary in this case by positing "a person firing a gun blindly through the woods for amusement may strike an unseen hunter in the heart," as an example of a shooting from which one could not reasonably infer the specific intent to kill.  *Id.*  The facts here could not be further from that example.  The lead opinion insists, however, there was "no direct testimony concerning how [appellant] deployed his weapon," and on that basis, "decline[s] to uphold the verdict based solely on the fact that at least one bullet struck a vital body part."  *Id.* at 15.  In my view, the circumstantial and direct evidence at trial clearly showed appellant fired six bullets at the pursuing officer from close range and the officer died when one of those bullets lodged in his lung.  The specific intent to kill can be inferred simply but absolutely from that fact, namely a deadly weapon was used on a vital part of the decedent's body, and any further analysis regarding the element of intent is unnecessary.

Second, I differ with the analysis regarding evidence presented at trial of appellant's prior possession of firearms.  At trial, Commonwealth witness Michael Luffey testified he saw appellant in possession of a black firearm twice in the weeks before the shooting.  Luffey testified he initially saw appellant in possession of a semi-automatic .40 caliber black firearm with a loaded clip, and some time later observed what he believed to be a different black handgun in the waistline of appellant's pants.  The trial court ruled Luffey's testimony regarding both sightings was admissible.  The lead opinion concludes, and I agree, Luffey's first sighting was properly admitted under the similar-weapon exception set forth in *Commonwealth v. Christine*, 125 A.3d 394, 400 (Pa. 2015) ("[t]he theory of the exception is that the weapon possessed **could have been** the weapon

used[.]") (emphasis added). However, I depart from the lead opinion's analysis on this point to the extent it concludes "the Commonwealth must lay a foundation to justify an inference that the weapon was the actual weapon used." Lead Opinion at 29. That overstates the requirement of the similar-weapon exception, in my view. I believe the inference is applicable in situations where the weapon possessed could have been the weapon used; the exception does not, I would hold, require a stricter inference the weapon introduced was the **actual** weapon used. Additionally, the lead opinion determines the trial court erred in admitting Luffey's testimony regarding his sighting of a black handgun in appellant's waistband that did not appear to be the .40 caliber firearm he saw appellant with on the earlier occasion, ostensibly because the evidence did not satisfy the similar-weapon exception. Although I question whether that evidence might have been admissible for some other purpose under Rule 404(b) such as to show motive, opportunity, or intent if its probative value outweighed its potential for unfair prejudice, I agree that the error, if any, was harmless beyond a reasonable doubt, given its *de minimis* nature.

Lastly, with respect to appellant's claim the Commonwealth failed to disclose an alleged plea agreement with witness Tavon Harper in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), the lead opinion notes "*Brady* claims are subject to waiver." Lead Opinion at 24, *citing Commonwealth v. Hannibal*, 156 A.3d 197, 209-10 (Pa. 2016) (failure to raise *Brady* claim at trial or on direct appeal resulted in waiver); *Commonwealth v. Roney*, 79 A.3d 595, 609 (Pa. 2013) (*Brady* issues which could have been raised at trial and/or direct appeal but were not, were waived on collateral review). I note both cases cited by the lead opinion involved this Court's disposition of a capital appeal at the collateral review stage, where the person sentenced to death had not raised a *Brady* claim in the trial court or on direct appeal. *See also Commonwealth v. Cousar*, 154 A.3d 287, 301-02 (Pa. 2017)

(*Brady* claim cognizable but not raised on post-verdict motions or direct capital appeal waived on collateral appeal); *Commonwealth v. Treiber*, 121 A.3d 435, 460-61 (Pa. 2015) (*Brady* claim waived on collateral appeal because it could have been raised in earlier proceeding); *Commonwealth v. Bomar*, 104 A.3d 1179, 1190-91 (Pa. 2014) (*Brady* claims apparently cognizable but not raised on post-verdict motions and direct capital appeal waivable on collateral appeal; however because Commonwealth did not assert waiver, this Court addressed substance of claims at collateral stage and dismissed them on the merits).

I concur in the present determination in this direct capital appeal that appellant's specific claim of a *Brady* violation was not properly presented to the trial court. Nevertheless, I note that appellant will likely have another opportunity to raise the claim if he properly challenges counsel's effectiveness on collateral review for failing to raise a cognizable *Brady* claim post-sentence which resulted in waiver of the claim on direct appeal.

In sum, I join the Court's opinion with respect to Parts I, III, IV, V(A), V(C), V(E), and VI-X, but concur only in the result as to Parts II, V(B), and V(D).

Justice Dougherty files a concurring opinion in which Justices Mundy and Brobson join.