J-A09030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JARVIS PAYTON :
:
Appellant : No. 935 EDA 2021

Appeal from the Judgment of Sentence Entered April 5, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001864-2018

BEFORE: NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

CONCURRING MEMORANDUM BY PELLEGRINI, J.:

**FILED SEPTEMBER 26, 2022**

The majority holds that the trial court did not abuse its discretion in admitting evidence that a group of men approached James Robinson and offered him money to not appear at trial and in admitting evidence that Jarvis Payton was seen in a vehicle containing a .38 revolver approximately two weeks after the shooting. While I disagree with the majority on both counts because I would hold that the trial court improperly admitted the evidence, I nevertheless concur with the majority because I would hold the admission of this evidence was harmless error.

_____

[*] Retired Senior Judge assigned to the Superior Court.

As the majority has explained, Robinson was in a grocery store in December 2018 when a group of men approached him and offered him $5,000 if he did not appear to testify in Payton's trial. Robinson was not able to identify the men nor did they name Payton when they spoke with him. Robinson testified that the grocery store was in the neighborhood where the shooting took place but he no longer lives in that area. It is undisputed that Payton was incarcerated when this interaction took place.

The majority relies on prison phone call recordings from February and March 2018 in support of is conclusion that the Commonwealth sufficiently linked the group of men to Payton. *See* Majority Memorandum at 9-10. In a pretrial motion *in limine*, the Commonwealth sought to establish that Payton and his associates used coded language on these calls to identify Robinson as the victim of the shooting. The majority concludes that based on those calls "there was some support for the trial court's conclusion that the Commonwealth's proffer could establish Payton's consciousness of guilt." ***Id.***

While Payton's language in the phone calls could conceivably have shown consciousness of guilt, I fail to see how these conversations nine to ten months prior to the interaction with Robinson in the grocery store could establish Payton's involvement. As the majority acknowledges, this interaction could only be probative of Payton's consciousness of guilt if Payton were "linked in some way to the threats." ***Commonwealth v. King***, 689 A.2d 918, 923 (Pa. Super. 1997); Majority Memorandum at 8. Based on the

amount of time that elapsed between the phone calls and the grocery store interaction, any link to Payton is entirely too speculative and attenuated to establish his involvement in the scheme. Moreover, there is no evidence establishing the identities of the men or suggesting that they were known to Payton. Without some evidence that Payton conspired with the men or was otherwise involved in the attempt to bribe Robinson, the evidence of this interaction was irrelevant and should have been excluded.

Next, Payton challenges testimony connecting him to a .38 revolver he contends belonged to his paramour, Kim Myers. Philadelphia Police Officer Nikolas Romito (Officer Romito) testified that approximately two weeks after the shooting, he stopped Payton for a traffic violation. Payton was driving Myers' vehicle and she was in the passenger seat. When she opened the glove box, Officer Romito observed a .38 revolver inside. After they were removed from the vehicle and handcuffed, Payton said that Myers had a license for the weapon. Officer Romito confirmed that she had a valid license and learned that the firearm was not registered. Myers later testified that the weapon belonged to her and that she used it for protection while driving for Lyft.

The Commonwealth presented further evidence at trial that a bullet was recovered from the room where the shooting occurred but no fired cartridge casing was found. Officer Robert Stott (Officer Stott), who testified as an expert from the Firearms Identification Unit of the Philadelphia police, determined the bullet could have been fired from either a 9-millimeter

semiautomatic pistol or a .38 revolver. A .38 revolver would not have ejected a cartridge casing. Finally, the victim testified that he was shot with a Glock 40 semiautomatic pistol and that he recognized the weapon because he owned one for his job as a security officer.

Similar-weapons evidence is admissible if the Commonwealth "lay[s] a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." ***Commonwealth v. Holt***, 273 A.3d 514, 536 (Pa. 2022) (citation omitted). Our Supreme Court has cautioned that the inference that the weapon in question was actually used in the crime is essential for the evidence to be admissible. ***Commonwealth v. Christine***, 125 A.3d 394, 401 n.10 (Pa. 2015). However, uncertainty regarding whether the weapon was, in fact, used in the crime concerns the weight and not the admissibility of the evidence. ***Id.*** In ***Holt***, our Supreme Court found that similar-weapon evidence was admissible when a witness testified that he had observed the defendant in possession of the same caliber firearm that was used in a shooting weeks before the shooting occurred. ***Holt***, ***supra***, at 539.

Payton's mere proximity to a firearm that may or may not have been the same caliber as the weapon used to shoot Robinson is not, in my view, sufficient to raise an inference that the revolver was actually used in the crime. Crucially, the Commonwealth could not establish the caliber of the weapon

used to shoot Robinson.[1] I would not conclude that the Commonwealth justified the inference that this specific .38 revolver was used in the crime when it could not even establish the caliber of weapon used. Moreover, the revolver was not recovered from Payton's person or home but rather was in the glove box of a vehicle he did not own. Myers, the vehicle's owner, was licensed to carry the weapon. Finally, the traffic stop in question occurred nearly two weeks after the shooting, which is not so close in time to raise an inference that Robinson possessed the revolver on the night of the crime. Based on these facts, I conclude that the trial court abused its discretion in admitting the evidence of the revolver as similar-weapons evidence.

Nonetheless, I conclude that both instances of improperly-admitted evidence amount to harmless error for the same reasons the Majority describes in its analysis of the first issue. Majority Memorandum at 10-11. The primary question of fact at trial concerned Robinson's identification of Payton as the shooter. Robinson was familiar with Payton prior to the shooting even though he did not know him by name; he testified that he saw Payton twice at the house prior to the shooting and spoke to him on one occasion;

_____

[1] Officer Stott testified that the recovered bullet "fits into a .38/9 millimeter classification. And the reason we use .38/9 millimeter in this case is because 38 caliber bullets and 9 millimeter bullets are almost identical in dimensions and weight. So sometimes when a bullet is damaged, as this nose area is slightly damaged, or there's some weight off a little bit, we put it into the classification of both, because technically it could have been fired from either one." N.T., 2/12/19, at 139-40.

Payton was present during the verbal altercation with Syretta Coleman-Bey when the police intervened, during which Robinson was filming on his phone; Robinson had seen a photo of Payton in Coleman-Bey's china cabinet on numerous occasions prior to the shooting; during their argument, Payton referred to Coleman-Bey as the mother of his child; and Robinson had a clear view of Payton during the shooting. Based on this knowledge, he was readily able to identify Payton as his assailant. Accordingly, I agree that "the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." **Holt**, **supra**, at 540 (citation omitted).

Accordingly, I concur in the result reached by the majority.

Judge Nichols joins this concurring memorandum.