J-S27022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MATTHEW E. MCFARLAND | : | |
| | : | |
| Appellant | : | No. 2200 EDA 2016 |

Appeal from the Judgment of Sentence February 2, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0004070-2014

BEFORE:    GANTMAN, P.J., OTT, J. and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                        **FILED MAY 23, 2017**

Matthew E. McFarland appeals from the judgment of sentence imposed on February 2, 2016, in the Court of Common Pleas of Chester County. A jury found McFarland guilty of sale or transfer of firearms – materially false written statement during a firearm purchase, and unsworn falsification to authorities.[1] The trial court sentenced McFarland to an aggregate term of 5 years' probation. McFarland claims (1) the verdicts were against the weight of the evidence, (2) the trial court erred in admitting evidence regarding his involuntary commitment, and (3) the trial court erred in admitting evidence

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6111(g)(4)(ii) and 4904(a)(1), respectively.

regarding subsequent inpatient treatment.[2]   Based upon the following, we affirm.

The trial court's opinion fully reviews the evidence presented at trial. *See* Trial Court Opinion, 8/30/2016, at 2–53.  Therefore, by way of background, we simply recite the following synopsis:

> The majority of the facts in this case were not in dispute.  In 2001, [McFarland] was in a serious car accident and suffered traumatic brain injury.  In 2003, [McFarland] was involuntarily committed pursuant to sections 302 and 303 [of the Pennsylvania Mental Health Procedures Act, 50 P.S. §§ 7302 and 7303].  In 2014, [McFarland] went to a gun shop, picked out a handgun, provided his driver's license and filled out the two required forms.  [McFarland] answered "no" to the question about being involuntarily committed and [McFarland] verified that his answers were true on the form.  [McFarland's] application was rejected due to his involuntary commitment.
>
> The only question in dispute is whether [McFarland] knew about his involuntary commitment and had the requisite intent to lie on the forms.

Trial Court Opinion, 8/30/2016, at 56.

McFarland first asserts the verdicts were against the weight of the evidence.[3]

_____

[2] McFarland preserved the issues raised on appeal by timely complying with the order of the trial court to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.  *See* McFarland's Concise Statement, 7/18/2016.

[3] McFarland's weight claim was raised in a post-sentence motion, which was denied by the trial court on June 1, 2016.  *See* McFarland's Motion for Post-Trial Relief, 2/11/2016.  *See also* Pa.R.Crim.P. 607(A) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial[.]").

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013).

The Pennsylvania Supreme Court has reiterated the proper standard of review of a weight claim as follows:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-1055 (Pa. 2013) (citations omitted) (emphasis in original).

"In order for an appellant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Mucci*, 143 A.3d 399, 411 (Pa. Super. 2016) (citation omitted).

McFarland was convicted pursuant to Section 6111(g)(4)(ii) of the Crimes Code, which provides:

> (4) Any person, purchaser or transferee commits a felony of the third degree if, in connection with the purchase, delivery or transfer of a firearm under this chapter, he knowingly and intentionally: …
>
>> (ii) makes any materially false written statement, including a statement on any form promulgated by federal or State agencies[.]

18 Pa.C.S. § 6111(g)(4)(ii). In addition, McFarland was convicted pursuant

to Section 4904(a)(1), which states:

> (a) *In general.* ━ A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:
>
>> (1) makes any written false statement which he does not believe to be true[.]

18 Pa.C.S. § 4904(a)(1).

The trial judge, the Honorable Phyllis R. Streitel, rejected McFarland's

weight challenge, explaining:

> After review of the evidence as set forth above, this court unequivocally determines that the guilty verdict of these charges is not against the weight of the evidence. To the contrary, the evidence strongly supports the verdict. The verdict is not contrary to the evidence as to shock one's sense of justice.
>
> ****
>
> The only question in dispute is whether [McFarland] knew about his involuntary commitment and had the requisite intent to lie on the forms. This court examined all of the evidence as summarized above and does not find that certain facts are so clearly of greater weight that to ignore them or give them equal weight with all the facts is to deny justice. [McFarland] clearly would like the court to give greater weight to the extensive evidence of his brain injury and lack of memory, but doing so would deny justice.
>
> [McFarland's] accident, brain injury and subsequent change to his path of life are certainly tragic. However, the evidence presented that he has no knowledge of the involuntary commitment and has never been told about it in the approximately eleven years after the hospitalization is just not credible. This court spent a great deal of time summarizing and digesting all the evidence presented and determines that the guilty verdict of these charges is not against the weight of the

evidence. For the above listed reasons, [McFarland] is not
entitled to a new trial.

Trial Court Opinion, 8/30/2016, at 56–57 (emphasis added).

McFarland asserts that he presented evidence that he suffered a near fatal, traumatic brain injury following a motor vehicle accident in 2001, and in this regard, he relies on the testimony of his expert witness, Dr. Carol Armstrong. Dr. Armstrong, who was qualified as an expert in the field of neuropsychology, testified that in her expert opinion to a reasonable degree of neuropsychological certainty, based upon her extensive testing of McFarland, review of his hospital records, and lengthy interview with him, he could not have recalled the involuntary commitment. McFarland also points out that he himself testified that he did not know of the involuntary commitment when he filled out the application, and that he would not have intentionally lied to get a gun knowing there would be a background check in connection with the purchase. *See* McFarland's Brief at 32.

McFarland claims the Commonwealth did not offer any evidence to rebut the nature of his injuries or his inability to form and recall memories. He argues the only evidence offered by the Commonwealth regarding his knowledge and intent came from Detective Sergeant Patricia Doyle, who testified that when she interviewed McFarland as to why he answered "no" to the involuntary commitment question, he told her he thought the question referred to the past year. McFarland asserts that because Detective Doyle did not memorialize this aspect of her conversation with him in her

contemporaneous police report, and because this trial testimony was presented a year after the interview, "Det. Sgt. Doyle's recollection should not have been relied upon." McFarland's Brief at 33.

McFarland's argument fails, however, because he is challenging the credibility of Detective Doyle, which is not for this Court to assess or reweigh. *See Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) (citations omitted) ("On appeal, this Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight. Our review is limited to determining whether the trial court abused its discretion; the Court's role precludes any *de novo* consideration of the underlying weight question."). In this case, the jury apparently chose to believe Detective Doyle, and not the testimony of Dr. Armstrong and McFarland that McFarland did not know of his involuntary commitment when he filled out the application. The trial court, in assessing the weight of the evidence, applied the correct standard for a weight claim ("when the … verdict is so contrary to the evidence as to shock one's sense of justice"), made detailed, comprehensive findings of fact regarding the testimony presented at trial,[4] and determined the jury's verdict was consistent with the evidence. Trial Court Opinion, 8/30/2016, at 55. Based on our review, we

_____

[4] The trial court summarized the testimony presented at trial in "Findings of Fact" that spanned over 50 pages of its 68-page opinion. *See* Trial Court Opinion, 8/30/2016.

find no abuse of discretion by the trial court in rejecting McFarland's weight challenge. Accordingly, McFarland's claim that the verdicts were against the weight of the evidence warrants no relief.

In his next issue, McFarland contends the trial court erred in admitting evidence regarding the underlying reason for his involuntary commitment because such evidence was prejudicial.

McFarland maintains the relevant issue in this case is whether he remembered the involuntary commitment of 2003 when he was filling out the applications in 2014, and asserts the trial court erred in allowing evidence of his aggression toward his brother as the underlying issue for his involuntary commitment because such evidence was prejudicial. *See* McFarland's Brief at 38. McFarland contends the trial court misapplied the legal standard set out in Pennsylvania Rule of Evidence 403, which provides:

> The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

McFarland recognizes "the Commonwealth's argument seeking admission of [McFarland's] aggression as the underlying reason of the involuntary commitment was that if the involuntary commitment was repeatedly raised through family discussions or provided in medical history to various facilities to treatment purposes, [McFarland] would be more likely

to have a memory of it." McFarland's Brief, at 36. However, McFarland claims the trial court, in "allowing evidence of [McFarland's] aggression towards his brother as the underlying issue for his involuntary commitment certainly created a 'danger' of unfair prejudice and confusion of issues before the jury." *Id.* at 38.

McFarland asserts "[t]he mixture of violence and aggression with psychiatric issues and an attempt to obtain a firearm is highly inflammatory." *Id.* He also contends the evidence created a danger of confusion in that the jury would be focused on whether the jury wanted an individual with a history of aggression and psychiatric issues to own a gun, rather than the issue before the jury of whether he intentionally supplied a false statement or was unable to recall the involuntary commitment. *See id.*

> It is well settled that the admission of evidence
>
> rests within the sound discretion of the trial court, and therefore, we "will reverse [the] trial court's decision . . . only if the appellant sustains the 'heavy burden' to show that the trial court has abused its discretion." *Commonwealth v. Bryant*, 620 Pa. 218, 67 A.3d 716, 726 (Pa. 2013) (citations omitted). …
>
>> It is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Id.* (alteration in original) (citation and internal quotation marks omitted).

> Only relevant evidence is admissible at trial. Pa.R.E. 402. Evidence is relevant if it tends to make a material fact more or less probable than it would be without the evidence. *Id.*, 401. Even if relevant, however, evidence may be excluded "if its probative value is outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.*, 403.

*Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015).

Having reviewed the record, we are not persuaded by McFarland's argument. Rather, we are satisfied that the trial court's ruling was a proper exercise of discretion. Moreover, Judge Streitel has presented a sound analysis of the admissibility of the underlying reason for McFarland's involuntary commitment and, therefore, we simply reiterate:

> The above evidentiary ruling was taken into account when the witnesses were questioned and testified. Out of the six witnesses presented at trial, only two were questioned with regard to this issue. Mr. [Joshua] Wa[r]field testified that the basis for the request for [McFarland's] commitment was listed as clear and present danger to himself and others. (N.T., 9/28/15, pgs. 103-104). He did not divulge the underlying reasons Ms. [Tracy] Stairs [McFarland's mother] requested the commitment.
>
> At trial, Ms. Stairs was questioned briefly by the Commonwealth about this as follows:
>
> > Q And am I also correct that part of that commitment, one of the reasons that you sought to have him committed to the hospital it involved his ongoing anger issues, correct?
> >
> > A Correct.
> >
> > Q That he was angry a lot?
> >
> > A Yes.

- 10 -

Q An[d] specifically, he was committed because he was angry and acting aggressively towards his brother?

…

A Yes.

(N.T., 9/30/16, p. 31).

Thereafter, defense counsel brought the issue up again when questioning Ms. Stairs as follows: "And we talked a little bit on cross-examination you talked to Miss Cardamone [the Commonwealth's attorney] about the reason Matthew was committed back in 2003 and the issues he was having at that time. As you know Matthew today are those types of anger issues a problem for him anymore?" (N.T., 9/30/16, p. 46). Ms. Stairs responded, "No."

That was the extent of the testimony with regard to the reasons [McFarland] was involuntarily committed. **It is clear that this evidence is relevant to assist the jury in deciding the truthfulness of the defense witnesses' claim that the hospitalization was never discussed in all the years after its occurrence, either among themselves or in [McFarland's] subsequent treatment. It was very limited in scope and sanitized to not include anything inflammatory, such as [McFarland's] homicidal ideation at the time.**

**The testimony about this subject was extremely brief. Its probative value far outweighed any prejudicial effect.** Its admission was not the result of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This brief evidence was properly admitted and [McFarland's] issue on appeal is without merit.

Trial Court Opinion, 8/30/2016, at 64–65 (emphasis supplied).

Accordingly, because we find the trial court's ruling does not constitute an abuse of discretion, we reject McFarland's claim that the trial court erred in admitting the evidence of the underlying reason for his involuntary commitment.

Lastly, McFarland claims the trial court erred "in allowing evidence referencing [his] voluntary inpatient treatment at Malvern Institute, a known drug and alcohol treatment facility, by instructing the Commonwealth to refer to the treatment as that to address 'other issues.'" McFarland's Brief at 39. McFarland asserts this evidence of "other issues" was prejudicial and should not have been allowed pursuant to P.R.E. 404(b).

Rule 404(b) provides, in relevant part:

(1)   *Prohibited Uses.*  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)   *Permitted Uses*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)–(2).

McFarland contends "[t]he probative value of whether [he] possibly remembered being involuntarily committed by possibly supplying this information by way of medical history to the voluntary inpatient treatment program he attended at Malvern Institute was certainly outweighed by a potential that this addiction information or information of the treatment of 'other issues' (other than psychiatric and aggressive issues) would create an unfair prejudice." McFarland's Brief at 40.  McFarland argues that if the jury knew Malvern Institute was a drug and alcohol treatment facility, this

information was unfairly prejudicial to him. He further argues that if the jury did not know what type of facility Malvern Institute was, the jury did know he voluntarily admitted himself inpatient to a treatment facility, which would indicate (1) that he had a severe problem since inpatient treatment was sought, (2) that he was admitting that he had a problem since it was a voluntary commitment, and (3) that he was struggling with issues other than psychiatric and aggression issues. *See id.* at 40–41.

The trial court rejected this claim, explaining that the reference to "other issues" did not cause undue prejudice to McFarland:

> We now turn to [McFarland's] final argument on appeal that "[t]he trial court erred in allowing evidence referencing [McFarland's] voluntary inpatient treatment at Malvern Institute, a known drug and alcohol treatment facility, by instructing the Commonwealth to refer to the treatment as that to address 'other issues'. Such evidence was prejudicial and should not have been allowed pursuant to Pa.R.E. 404(b)."
>
> A discussion between the court and counsel regarding the Malvern Institute was first addressed in argument outside the hearing of the jury in the context of the expert witness and [McFarland's] medical history. *See* N.T., 9/29/15, pgs. 80 and 83-84). In addition, [McFarland] was briefly questioned about it as follows:
>
> Q     Did you ever go to Malvern Institute?
>
> A     I think so.
>
> Q     And did you ever do outpatient therapy?
>
> A     Where?
>
> Q     Connected to Malvern Institute?
>
> A     I don't know.

(N.T., 9/29/15, p. 256).

However, the testimony reference to the Malvern Institute to which [McFarland] objects on appeal occurred during the questioning of Ms. Stairs [McFarland's mother]. The following question, objection and sidebar took place:

Q       There were times that he went into an inpatient treatment program for issues that he was dealing with, correct?

MS. WALKER [MCFARLAND'S COUNSEL]:  Objection, Your Honor. Not sure where that foundation for that question is laid. She is referring to inpatient involuntary treatment.

MS. CARDAMONE [COMMONWEALTH's COUNSEL]:    I'm referring to the Malvern Institute.

MS. WALKER:  That has nothing to do with the psychiatric issue.

THE COURT:  Well, I'm not asking for your testimony. I'll see you both at sidebar.

(SIDEBAR RECORDED)

THE COURT:  Now what is going on?

MS. WALKER:  Malvern Institute was drug treatment that he did or alcohol. That is an inpatient treatment voluntarily for alcoholics. It's not relevant to anything.

MS. CARDAMONE:  Your Honor, again, it is because that gentleman that has consistently since 2002 been dealing with psychological issues and emotional consequences of his accident. I'm sanitizing it by not specifically eliciting drugs and alcohol. But there is no way in that they don't discuss things like involuntary hospitalization in the course of his help.

You don't think that is going to come up in a counseling session? You don't think they are going to talk about

medical history? It's not as if the kid got out of the hospital and never had treatment.

THE COURT:  These are people from Chester County. Some people out there know that Malvern Institute is for drugs and alcohol.

MS. CARDAMONE:  I'm trying to strike – I'm being careful in law and in fairness.

THE COURT:  Did he go inpatient?

MS. CARDAMONE:  Yes.

MS. WALKER:  Why is it so important to the jury? He went to other inpatient treatments. They are going to think this is involuntary treatment.

MS. CARDAMONE:  He voluntarily went to inpatient drug and alcohol treatment.

THE COURT:  We don't know. I don't want to get into drug and alcohol.

MS. CARDAMONE:  I think I'm trying to keep that out but this is relevant.

THE COURT:  But here's the thing, if he went in something other than that would be misleading. And if we say he went in for drugs and alcohol it's not relevant and it has a negative connotation.

MS. CARDAMONE:  My argument it is relevant because in 2015 common sense is telling you you're going to be talking about issues and talking about things that you feel wrong about, things that happen to you: You're certainly going to be talking to a counselor about your psychiatric history. That conversation is going to include whether or not you went to the hospital.

THE COURT:  I think we're making a lot of assumptions to get to that point.

MS. CARDAMONE: It's common sense if they are reasonable inferences to make. I don't believe I'm forbidden from making those inferences because it might make the defendant look bad. These are the facts of our case and they are relevant facts.

MS. WALKER: She [apparently referring to Ms. Stairs, McFarland's mother] wasn't in Malvern Institute.

THE COURT: Why don't we do this. You can establish that he went to a facility for inpatient treatment for collateral issues.

MS. CARDAMONE: I think that is exactly what I did. He went to Malvern to deal with some of his issues.

THE COURT: I don't want to get the name in again. Didn't he go to another facility for treatment of the collateral issues?

MS. WALKER: Can we also make it clear that it was not beyond them to –

THE COURT: He voluntarily went to another facility. How long was he there?

MS. CARDAMONE: I don't know.

MS. WALKER: Nobody knows. He doesn't know.

THE COURT: When was it?

MS. WALKER: Nobody knows. That is why this is –

MS. CARDAMONE: She may know.

THE COURT: He voluntarily went to inpatient to a facility to address collateral issues. I'll allow that. You can ask her a couple times if she remembers this, where was it, was it in Chester County. If she seems confused the facility in Chester County would be your follow-up.

MS. WALKER: I'm a little confused. She is not going to understand the whole collateral issue.

MS. CARDAMONE: That is why –

THE COURT: Okay. Okay. It's okay to address other issues. How is that?

MS. WALKER: I want to make sure they are not confusing it with inpatient treatment that means we don't need to get into the facts that he is there for alcohol.

THE COURT: We have a cardiac thoracic surgeon in the group. I think someone like that will probably open his mouth.

MS. WALKER: There is an RN on there as well. She'll understand too.

THE COURT: Okay. You can get into that. Try to avoid the name Malvern. Twelve people, someone has to have a relative who has been there. Everything I heard so far is heartbreaking and I'm just like - I'm just like the fifteenth juror just trying to spend the morning in a truthful way. All right.

(N.T., 9/30/15, pgs. 37-42).

Thereafter, Ms. Stairs answered the questions as follows:

Q      Since he got out of the hospital in 2003 ever since that time he had ongoing psychiatric counseling, correct?

A      Yes, he has had ongoing counselors.

Q      That he worked with?

A      Yes.

Q      He has been to outpatient treatment to deal with some of his issues, correct?

A      Correct.

Q      And he voluntarily went to an inpatient treatment facility to deal with some of his issues, correct?

A       Yes.

(N.T., 9/30/15, pgs. 42-43).

It was proper to allow testimony regarding further counseling and treatment [McFarland] received to show that [McFarland] would have been discussing issues and providing medical history at various times throughout the years. It was certainly relevant and admissible. By not referencing drug and/or alcohol treatment, it diminished any negative or prejudicial connotations regarding the treatment. Referring to [McFarland's] treatment of "other issues" was proper and protected [McFarland] from prejudice. The brief reference to the Malvern Institute was not highlighted, nor was the jury informed as to the type of treatment the facility administers.

Accordingly, the evidentiary ruling and limitation was proper and [McFarland's] argument on appeal is without merit.

Trial Court Opinion, 8/30/2016, at 65–69.

Based on our review, we discern no basis upon which to disturb the conclusion of the trial court.  In light of Judge Streitel's well-reasoned discussion, no further comment by this Court is warranted here. Accordingly, McFarland's final claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017

- 18 -