J-A25045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHAUN PETERSON, | : | |
| | : | |
| Appellant. | : | No. 61 EDA 2018 |

Appeal from the PCRA Order, December 21, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0008630-2014.

BEFORE:  PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED JANUARY 18, 2019**

Rashaun Peterson appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On May 18, 2015, a jury convicted Peterson of first-degree murder and related charges involving a January 13, 2014 incident that resulted in the shooting death of Acquil Bickerstaff.  The pertinent facts and procedural history have been summarized as follows:

> Three witnesses, Rashaad Lewis, Michael James, and Madrigal Pitman gave statements to police regarding the shooting.  Lewis told detectives that he saw [Peterson] and Bickerstaff arguing when [Peterson] retrieved a firearm from his grandmother's house nearby and returned to argue some more before shooting Bickerstaff four times.  According to Lewis, [Peterson] began walking away but turned and shot Bickerstaff again as he lay on the ground.

Lewis identified [Peterson] from photographs. James gave a similar statement to police and identified [Peterson] from a photo array. Pitman told police that she was with Bickerstaff, [Peterson], and Aaron Peterson (Peterson's cousin) moments before Bickerstaff was shot. Pitman told police that the three men went around the corner and she heard four gunshots, and then several more shots after a brief pause. While fleeing the scene, Pitman heard Aaron Peterson ask [Peterson] why he shot the victim.

In addition, police recovered video surveillance from Pretty Mary's convenience store. [Peterson] and Bickerstaff are seen walking out of the camera's view toward the corner of Chelten Avenue and Norwood Street. Aaron Peterson is seen walking in that same direction thirty seconds later. About one minute later, the surveillance video shows two males, with their backs to the camera, fleeing the scene and looking over their shoulders.

On April 30, 2014, police arrested [Peterson]. The Commonwealth charged him with the aforementioned crimes. On May 11, 2015, a jury trial commenced. The Commonwealth presented the evidence as recited above. Further, at trial, Lewis was questioned regarding his statements to police. Originally, Lewis told police that he could not identify the shooter, but later identified [Peterson] in a subsequent statement to police; he claimed he initially feared retaliation. Lewis also testified at trial that he did not remember several of his statements to police and claimed that several of his signatures on his statement "looked funny." The Commonwealth also presented evidence that approximately one month prior to the murder, on December 17, 2013, Officer Jason Tomon observed a box of Smith and Wesson .40 caliber ammunition next to the driver's seat of a vehicle [Peterson] was driving. In investigating the murder at issue, police recovered seven .40-caliber Smith and Wesson casings from the ground at the scene.

**Commonwealth v. Peterson**, 151 A.3d 1135 (Pa. Super. 2016),

unpublished memorandum at 2-3.

Following his convictions, the trial court sentenced Peterson to an

aggregate term of life in prison. Peterson filed a direct appeal to this Court,

and we affirmed his judgment of sentence on May 4, 2016. **Peterson**, **supra**. Peterson did not seek further review.

Peterson filed a timely *pro se* PCRA petition on May 2, 2017. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on September 14, 2017. On November 16, 2017, the PCRA court issued Pa.R.Crim.P. 907 notice of its intention dismiss the amended petition without a hearing. Peterson did not file a response. By Order entered December 2, 2017, the PCRA court dismissed the petition. This timely appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Peterson raises the following issues on appeal:

I.  Whether trial counsel was ineffective for failing to object at trial and argue on direct appeal that the trial court erred in admitting Officer Tomon's testimony regarding Peterson's alleged possession of a box of .40 caliber ammunition during a December 17, 2013 vehicle stop.

II. Whether trial counsel was ineffective for failing to thoroughly cross-examine Officer Tomon regarding his testimony of the December 17, 2013 vehicle stop.

III. Whether trial counsel was ineffective for failing to motion for the disqualification of Juror Number 2.

**See** Peterson's Brief at 3.

Our scope and standard of review is well settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by

the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

All of Peterson's issues allege the ineffective assistance of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. ***Id.*** at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." ***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*). "Whether the facts rise to the level of arguable merit is a legal determination.'" ***Id.*** (citing ***Commonwealth v. Saranchak***, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a

particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted). A petitioner asserting ineffectiveness based upon trial strategy must demonstrate that the "alternatives not chosen offered a potential for success substantially greater than the tactics utilized." *Commonwealth v. Clark*, 626 A.2d 154, 157 (Pa. 1993). "We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he [or she] may have taken." *Stewart*, 84 A.3d at 707. A PCRA petitioner is not entitled to post-conviction relief simply because a chosen strategy was unsuccessful. *Commonwealth v. Buksa*, 655 A.2d 576, 582 (Pa. Super. 1995).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Stewart*, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa. Super. 2006).

Finally, when considering an ineffective assistance of counsel claim, the PCRA court "is not required to analyze these [prongs] in any particular order of priority; instead if a claim fails under any necessary [prong] of the

ineffectiveness test, the court may proceed to that [prong] first."
*Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citations omitted). In particular, when it is clear that the petitioner has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995).

Peterson's first two claims of ineffectiveness involve the admission of the trial testimony of Officer Jason Tomon. Because he challenges the trial court's evidentiary ruling, this ineffectiveness claim must be considered subject to our deferential standard of review:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. Super. 2015) (citations omitted).

Generally, all relevant evidence is admissible. Pa.R.E. 402. Evidence is relevant if "it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Pa.R.E. 401. Thus, "[t]he threshold for relevance is low due to the liberal '*any* tendency' prerequisite." *Brady v. Urbas*, 111 A.3d 1155, 1162 (Pa. 2015) (emphasis in original).

- 6 -

Relevant evidence may be excluded, however, if its probative value is outweighed by a danger of unfair prejudice. Pa.R.E. 403. "Evidence is not unfairly prejudicial simply because it is harmful to the defendant's case. Rather, exclusion of evidence on this ground is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Foley*, 38 A.3d 882, 891 (Pa. Super. 2012) (citations omitted).

As part of its evidence at trial, the Commonwealth sought to present the testimony of Officer Tomon, who approximately one month prior to the shooting incident, conducted a vehicle stop of Peterson. At trial, Officer Tomon testified that, after Peterson exited the driver's seat of the vehicle, he observed a box of .40 caliber Smith & Wesson bullets between the vehicle's front seats. Prior to trial, trial counsel had made an oral motion *in limine* to exclude testimony regarding the ammunition because no gun was found. According to trial counsel, testimony regarding the observation of the same ammunition a month earlier during a traffic stop had only a "tenuous link" to the same type of bullet casings found at the crime scene. N.T., 3/2/15, at 205. The trial court disagreed, and permitted the testimony at trial.

The PCRA court, who also presided at Peterson's trial, explained its reasoning as follows:

> At trial, the ammunition evidence was admitted under the "similar weapons exception." *See Commonwealth v. Christine*, 125 A.3d 394 (Pa. 2015). Under this exception,

a weapon not specifically linked to the crime may be admitted into evidence if the Commonwealth "lay[s] a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." ***Christine***, 125 A.3d at 396 n.4 (*citing* ***Commonwealth v. Lee***, 662 A.2d 645, 652 (Pa. 1995) (citation omitted)). Any uncertainty that the weapon is the actual weapon used in the crime "goes to the weight of such evidence," rather than its admissibility." ***Christine***, 125 A.3d at 400 (citation omitted).

Although the item at issue is not a weapon, but ammunition, the same principle for the "similar weapon exception" applies. In the case at bar, [Peterson] had access to ammunition—just one month before the murder— of the same caliber and manufacture as used to kill Acquil Bickerstaff. This evidence was properly admitted to show that [Peterson] likely possessed a gun capable of firing the ammunition used to commit the crime. Because this Court properly admitted the ammunition into evidence, [Peterson's] underlying claim has no arguable merit. As such, no relief is due.

PCRA Court Opinion, 12/21/17, at 6-7 (footnote omitted). Our review of the record and relevant case law supports the PCRA court's conclusion.

In arguing to the contrary, Peterson asserts that "there is *no* paperwork documenting the alleged discovery of these bullets; there were three other people besides [Peterson] in the vehicle where the bullets were found" and "there was no evidence presented that the .40 caliber Smith & Wesson bullets observed by Officer Tomon were Remington or PMC bullets, the brand recovered at the crime scene." Peterson's Brief at 10. Peterson further argues that trial counsel had no reasonable basis for failing to raise this issue on appeal because it "was not relevant, inadmissible, and highly prejudicial." In order for the testimony regarding the .40 caliber bullets to be relevant, the

jury would have to make the inappropriate inference that the bullets observed by Officer Tomon were the bullets used in the instant case." ***Id.*** at 10-11. According to Peterson, "[t]here was no evidence presented that the bullets belonged to [him]." Peterson's Brief at 11. Finally, Peterson argues he suffered prejudice because "[t]his evidence was admitted solely for the purposes of allowing the jury to impermissibly infer that since [he] was once in the presence of .40 caliber Smith & Wesson bullets, a generic bullet, he must have been the shooter in this case." ***Id.*** We disagree.

Initially, although Peterson initially criticizes the PCRA court for relying on this Court's unpublished memorandum in ***Commonwealth v. Bradshear***, 2016 WL 7495120 (Pa. Super. 2016), to support its admission of testimony regarding the ammunition, the cases cited therein, as well as other Pennsylvania precedent, establish that Peterson's ineffectiveness claim lacks arguable merit. ***See***, ***e.g.***, ***Commonwealth v. Owens***, 929 A.2d 1187, 1191 (Pa. Super. 2007) (explaining that, although handguns involved in the shooting were never recovered, handgun parts and ammunition were "relevant as tending to prove that the defendants had weapons similar to the one used in the perpetration of the crime").[1]

---

[1] Although our Supreme Court in ***Christine*** criticized our reiteration of the "similar weapons exception" because we did not include language "referring to the need for a foundation justifying that the weapon was used in the crime," ***Christine***, 125 A.3d at 400 n.10, the Court did not overrule ***Owens***' holding that the gun parts and ammunition were admissible.

Moreover, even if this issue had arguable merit, and trial counsel had no reasonable basis for failing to raise the claim on appeal, we conclude that, given the overwhelming evidence of Peterson's guilt, any error in admitting Officer Tomon's testimony was harmless. Peterson's murder conviction was supported by the testimony of multiple eyewitnesses who knew both him and the victim, and saw Peterson shoot the victim after demanding that he step out of the reach of a nearby surveillance camera. *See Commonwealth v. Stokes*, 78 A.3d 644, 656 (Pa. Super. 2013) (holding any error in admitting evidence under similar weapons exception was harmless due to overwhelming evidence of guilt, including testimony of several eyewitnesses who identified the defendant, and testified he shot the victim at close range). Thus, Peterson's first ineffectiveness claim fails.

In his second claim of ineffectiveness, Peterson argues that trial counsel was ineffective for failing to thoroughly cross-examine Officer Tomon regarding the December 17, 2013 traffic stop. Peterson argues that, although prior to trial, trial counsel indicated that another passenger in the stopped vehicle possessed a receipt for the ammunition, trial counsel failed to cross-examine Officer Tomon regarding this fact. He further argues that, "[m]ost importantly, counsel neglected to cross-examine Officer Tomon regarding his failure to memorialize in the 75-48 that there were .40 caliber Smith & Wesson

bullets in the vehicle." Peterson's Brief at 12.[2] Peterson asserts that "[e]ffectively cross-examining Officer Tomon would have highlighted to the jury that not only was the search of the vehicle [he] was in illegal, but that the .40 caliber Smith & Wesson bullets, an incredibly common caliber bullet, could have belonged to any of the other passengers in that vehicle, not necessarily [Peterson]." Peterson's Brief at 12. Finally, Peterson claims that he was prejudiced by this lack of cross-examination because "the only evidence tending to show that [he] was the shooter in the instant case came from the inconsistent testimony of the Commonwealth witnesses[.]" Peterson's Brief at 12-13.

The PCRA court found no merit to Peterson's claim:

> Other than trial counsel's representation at the motion [*in limine*] hearing, there is no evidence of any receipt. At the same motion hearing, the Commonwealth stated that it had no knowledge of any receipt. N.T., 3/02/2015 at 205-08. Officer Tomon also did not reference it in his 75-48. Moreover, [Peterson] failed to attach a copy of the receipt to his petition. Because there is no evidence of any receipt, [Peterson] fails to meet his burden in show basis for trial counsel to cross-examine Officer Tomon about the receipt. ***See Commonwealth v. Smith***, 121 A.3d 1049, 1055 (Pa. Super. 2015) (throughout the PCRA proceedings the petitioner bears the burden to plead and prove his claims). Accordingly, no relief is warranted.
>
> [Peterson] also claims that trial counsel failed to cross-examine the officer on why he did not memorialize in the 75-48 that there was Smith & Wesson .40 caliber ammunition in the van. Although trial counsel did not cross-

_____

[2] A 75-48A refers to the Philadelphia Police Department's Vehicle or Pedestrian Investigation Report.

examine Officer Tomon specifically on why he did not memorialize the ammunition on his 75-48, trial counsel did review the 75-48 with the officer, and thoroughly questioned him on the number of occupants in the vehicle, and their names, suggesting to the jury that one of the other van occupants could have owned the ammunition. N.T., 5/13/2015, at 172-77. Irrespective of trial counsel's inaction, [Peterson] cannot show prejudice. There were three independent witnesses to the murder—two of which knew [Peterson] and the victim prior to the murder.

PCRA Court Opinion, 12/21/17, at 7-8 (footnote omitted).

Once again, our review of the record supports the PCRA court's conclusions. Initially, we note that Peterson provides no further argument to support his claim of an illegal "search" so we will not consider it further. *See Commonwealth v. Tielsch,* 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal). Additionally, we note that even if a sales receipt for the ammunition was found on another occupant of the vehicle, the issue is access to the ammunition not whether Peterson owned it. Moreover, although PCRA counsel believes other questions should have been asked upon-cross examination, a hindsight analysis does not equate to a finding of ineffectiveness. *Stewart*, *supra*. Finally, the trial testimony of the several eyewitnesses was only inconsistent in so far as one witness contradicted his prior statements to police. Thus, Peterson's second claim of ineffective assistance of counsel fails.

In his third and final claim of ineffectiveness, Peterson asserts that trial counsel was ineffective for failing to file a motion for disqualification of Juror Number Two. It is well settled:

The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. . . . It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. . . . A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice by his or her conduct or answers to questions. . . . The decision on whether to disqualify is within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion. . . .

*Commonwealth v. Weiss*, 776 A.2d 958, 966 (citations and emphasis omitted).

The PCRA court found this claim to be devoid of merit because there was no reason for trial counsel to file such a motion. The court explained:

During the trial, Juror Number Two recognized a person from church sitting in the gallery on [Peterson's] side of the courtroom. [It was later determined that this person was Peterson's aunt.] After the juror informed this Court's staff, this Court held an on-the-record discussion with the juror. During this discussion, in which [trial] counsel had an opportunity to ask questions, Juror Number Two stated that the person he had recognized from the gallery was not a friend. N.T., 5/11/2015, at 116. This Court asked the juror if his acquaintance with this person would have any effect on his deliberations in this case, to which the juror responded no. The juror assured this Court that he could be fair to both sides. The juror further stated that he had not told anyone on the jury that he recognized the person. This Court found the juror's responses to be sincere and found no reason to disqualify him.

Trial counsel stated that he had no objection, and offered a reasonable explanation why. He pointed out that it was not uncommon for jurors to know people or witnesses at

- 13 -

trial. He further stated that he had spoken with the person in the gallery, that that the person agreed to leave and would no longer attend the trial. *Id.* at 122-23. For the foregoing reasons, no relief is due.

PCRA Court Opinion, 12/21/17, at 8 (footnote omitted).

Once again, our review of the record supports the PCRA court's conclusions. Peterson's arguments to the contrary are without merit. Without citation to the record, Peterson makes the bare assertion that "[t]estimony shows that this juror was noticeably uncomfortable having recognized [his] aunt, whom was sitting on [his] side of the courtroom." Peterson's Brief at 14. Peterson further argues that he was prejudiced because "there is [a] reasonable probability that the court would have excused Juror Number 2 had trial counsel made the argument that the juror's demeanor showed that he could not be fair and impartial, despite any representations to the contrary." *Id.* at 15. We disagree.

"It was the trial court that observed the juror's demeanor and heard his responses; it was, therefore, the trial court that was in the best position to assess the credibility of the juror's statements that he could be fair." *Weiss*, 776 A.2d at 966. In essence, Peterson inappropriately asks this Court to reweigh the trial court's credibility determination. This we cannot do. *See id.* (explaining that this Court may properly refuse to excuse a juror for cause when the trial judge believed that the juror would be fair and impartial. Thus, Peterson's third and final ineffective assistance of counsel claim fails.

In sum, because all of Peterson's ineffective assistance of counsel claims lack arguable merit, we affirm the PCRA court's order denying Peterson post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/18/19