J-S04038-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERNESTO MARTINEZ | : | |
| | : | |
| Appellant | : | No. 2599 EDA 2018 |

Appeal from the PCRA Order Entered July 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0015196-2008

BEFORE:  BENDER, P.J.E., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                **FILED MARCH 10, 2020**

Ernesto Martinez (Appellant) appeals *pro se* from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

A prior panel of this Court set forth the factual history of this case:

> The facts as found by the jury were as follows:  Vanneliz Ramos and her sister Dalila Ramos testified that on July 3, 2006, they received a call from their younger sister Janet Ramos who told them that her bicycle had been stolen.  The Ramos sisters then called Appellant and [his co-defendant] to confront the individuals who might have stolen the bike.  Appellant and his co-defendant made their way down to the scene of the crime, at the intersection of 3rd and Indiana Streets, where they became involved in a verbal altercation with the unarmed victim, Terrell Adams.  The witnesses watched the altercation from a distance and they observed both Appellant and his co-defendant begin shooting.  Vanneliz Ramos was able to make identification [of the perpetrators] because she had known Appellant all her life and had known his co-defendant for about a year.
>
> During the altercation, a crowd of twenty to thirty people gathered around the co-defendant and the decedent.  Both

Appellant and co-defendant started to shoot into the crowd. The decedent was shot in the left side of his chest, piercing his lung and causing massive internal injuries. He was pronounced dead upon reaching Temple University Hospital.

The decedent's brother, Jonathan Adams, was also shot in the abdomen but survived. Luis Rodriguez, an old colleague of Appellant, was also shot in the right abdominal area and he [] survived.

Ra-chel Wilson was with Vanneliz Ramos and her sister Dalila Ramos when they received the call from their sister Janet Ramos about the bicycle. [Ra-chel Wilson and Dalila Ramos] had known Appellant for a few years and his co-defendant for a few months. They too saw Appellant and the co-defendant arguing with the decedent. They observed Appellant and the co-defendant with guns during the argument and then heard shots being fired. They then observed the decedent fall to the ground.

Ra-chel Wilson[,] in her initial statement given approximately three weeks after the shooting on July 26, 2006, only identified the co-defendant as the shooter because according to her testimony, Appellant had threatened her and her family with violence if she implicated him as the shooter. However, in a verbatim signed statement given to police detectives six months after the shooting, she [] identified Appellant as the shooter. By its verdict, the jury found this witness credible and believed the testimony implicating Appellant.

Furthermore, Vanneliz Ramos[,] in her initial statement given January 23, 2007[,] only identified the co-defendant as the shooter. However, at the preliminary hearing on August 15, 2007, she identified both Appellant and co-defendant as the shooters. Again, by its verdict, the jury chose to believe this witness as well. At trial, [Ra-chel Wilson and Vanneliz Ramos] testified that both Appellant and co-defendant were the shooters.

Andiz Briggs had known Appellant and his co-defendant a few months before the shooting took place. He observed a verbal altercation between the decedent, Appellant, and his co-defendant and observed Appellant and the co-defendant retrieve their guns. He saw both [Appellant and the co-defendant] fire at the crowd and at the decedent.

***Commonwealth v. Martinez***, 2399 EDA 2010 at 2-3 (Pa. Super. Sept. 16, 2011) (unpublished memorandum) (quoting Trial Court Opinion, 3/1/11, at 1-3 (citations to notes of testimony omitted)).

The PCRA court summarized the procedural history that followed:

In December [] 2009, Appellant, after a jury trial, was convicted of first-degree murder and possession of an instrument of crime. On March 10, 2010, this [c]ourt imposed [a] sentence of life imprisonment. Appellant appealed to the Superior Court, which on September 16, 2011, affirmed the judgment of sentence. On March 21, 2012, the Pennsylvania Supreme court denied *allocatur*. On October 1, 2012, the United States Supreme Court denied Appellant's writ of *certiorari*.

On August 27, 2013, Appellant timely filed a *pro se* [PCRA petition]. This was Appellant's first PCRA petition. Thereafter, Appellant was assigned counsel to represent him. On May 9, 2014, counsel filed a no[-]merit letter [pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*)] that incorrectly stated that Appellant failed to timely file his *pro se* petition. On June 12, 2014, Appellant filed a supplemental PCRA petition. On October 14, 2014, [c]ounsel thereafter filed a second no-merit letter, wherein he discussed one issue and argued it lacked merit. On May 15, 2015, this [c]ourt issued an order denying Appellant PCRA relief and permitting counsel to withdraw. On January 24, 2017, following an appeal, the Superior Court vacated this [c]ourt's order and remanded the matter because counsel failed to address all of the issues Appellant raised in his PCRA petition. New counsel [(PCRA Counsel)] was appointed to represent Appellant following remand.

On March 29, 2018, [PCRA Counsel] filed a [no-merit] letter . . . stating the issues raised in the *pro se* petition were meritless and that after review of the record, no other issues of arguable merit existed. After review of [PCRA Counsel]'s [no-merit] letter and after review of the file, this [c]ourt found the issues raised in the *pro se* petition were meritless and that no other issues of arguable merit existed. Accordingly, this [c]ourt sent Appellant, pursuant to Pa.R.Crim.P. 907, its Notice of Intent to Dismiss. On June 26, 2018, Appellant filed a *pro se* opposition to [PCRA

Counsel]'s [no-merit] letter. On July 20, 2018, this [c]ourt dismissed the [PCRA] Petition and permitted counsel to withdraw. On August 23, 2018,[1] Appellant filed a [*pro se*] Notice of Appeal to the Superior Court. On August 28, 2018, this [c]ourt filed an order pursuant to Pa.R.A.P. 1925(b) and Appellant timely replied.

PCRA Court Opinion, 5/7/19, at 1-2.

On appeal, Appellant presents the following issues for review:

A. Was [Trial Counsel] ineffective for failing to object to the testimony of [L]uis Rodriguez, Detective Gregory Santamala, and Officer William Hunter?

B. Was [Trial Counsel] ineffective for not requesting a limiting instruction that would h[ave] carefully explained to the [j]ury the limited purpose for which the "Great Equalizer" was admitted?

C. Was PCRA Counsel ineffective for not raising [T]rial [C]ounsel's failure to request a drug instruction for Vannelise Ramos and Rachel Wilson?

---

[1] "In a criminal case, the date of entry of an order [that triggers the appeal period] is the date the clerk of courts enters the order on the docket, furnishes a copy of the order to the parties, and records the time and manner of notice on the docket." ***Commonwealth v. Jerman***, 762 A.2d 366, 368 (Pa. Super. 2000). The rules of criminal procedure require prompt service of "any order . . . on each party's attorney, or the party if unrepresented." Pa.R.Crim.P. 114(B); ***see also*** Pa.R.Crim.P. 114(C)(2) (requiring docket entries to contain the date of receipt in the clerk's office of the order, the date appearing on the order, and the date of service of the order); Pa.R.Crim.P. 907(4) (requiring PCRA court to issue promptly order dismissing PCRA petition without a hearing, which advises "the defendant by certified mail, return receipt requested, of the right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed"). Our review of the docket discloses no indication that the clerk furnished a copy of the July, 20, 2018 order denying the PCRA petition to Appellant. The only indication in the record that Appellant ever received the order was in the prison mail log Appellant submitted with his notice of appeal, which states that he received the order on August 21, 2018. Thus, Appellant's August 23, 2018 notice of appeal was timely filed because the period for taking an appeal was not triggered until he received the order dismissing his PCRA petition on August 21, 2018. ***See Jerman***, 762 A.2d at 368.

Appellant's Brief at 4.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Busanet***, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." ***Id.***

Each of Appellant's issues raise claims of ineffective assistance of counsel. With respect to ineffective assistance of counsel claims, our Supreme Court has stated:

> It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. ***Commonwealth v. Cooper***, 941 A.2d 655, 664 (Pa. 2007). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." ***Id.*** A PCRA petitioner must address each of these prongs on appeal. ***See Commonwealth v. Natividad***, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the ***Pierce*** elements on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. ***Cooper***, 941 A.2d at 664.

***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) (citations modified).

- 5 -

For his first issue, Appellant argues that Trial Counsel should have objected when counsel for the co-defendant introduced as substantive evidence a statement Luis Rodriguez (Rodriguez) gave to the police after the shooting. In his statement, Rodriguez stated that Appellant was the only person he witnessed firing a gun. At trial, however, Rodriguez testified that he did not recall giving that statement to the police. Appellant asserts that because Rodriguez could not recall giving the statement to police, co-defendant's counsel could not cross-examine Rodriguez regarding the statement, and the statement should not have been admitted as substantive evidence. Additionally, Appellant argues that Trial Counsel compounded his failure to object to the introduction of Rodriguez's statement by failing to object when the Commonwealth called two police officers to the stand to confirm everything Rodriguez said in his police statement.

Even assuming, *arguendo*, that Appellant's argument has merit, we nevertheless conclude that he was not prejudiced by Trial Counsel's failure to object. The record reflects that at trial, three individuals testified that they witnessed first-hand Appellant firing a gun at the victim, Terrell Adams (Adams). Ra-chel Wilson (Wilson) testified that she saw Appellant firing a gun at the time Adams was shot and that Appellant later boasted about killing Adams. N.T., 11/30/09, at 141-42, 148-49, 154. Vanneliz Ramos (Ramos) stated that she witnessed Appellant firing a gun during the incident and that Appellant also bragged to her about killing Adams. N.T., 12/1/09, at 35-36,

53-54. Finally, Andiz Briggs similarly testified to witnessing Appellant pull a gun and fire it at Adams. N.T., 12/2/09, at 123, 126-29.

Given the overwhelming eyewitness testimony of the murder (*i.e.*, three individuals who witnessed Appellant shoot Adams), we cannot conclude that, even if the statement Rodriguez gave to police should have been excluded at trial, its exclusion would have impacted the verdict. Therefore, Appellant cannot satisfy the prejudice prong of the ineffective assistance of counsel test, and the trial court did not abuse its discretion in denying this claim. **See Wholaver**, 177 A.3d at 144.

For his second issue, Appellant argues that Trial Counsel was ineffective for failing to ask for a limiting instruction that explained how the jury was to use evidence that police recovered a handgun from Appellant's apartment, six months after the murder, similar to the handgun witnesses observed him using during the shooting. Appellant asserts that Trial Counsel should have requested that the trial court instruct the jury that Appellant's possession of a firearm did not establish his guilt. Appellant's claim does not warrant relief.

First, Appellant's claim lacks arguable merit. Our Supreme Court has held that "the fact the accused had a weapon or implement suitable to the commission of the crime charged . . . is always a proper ingredient of the case for the prosecution." **Commonwealth v. Christine**, 125 A.3d 394, 400 (Pa. 2015) (quotations and citations omitted). "Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence."

*Id.* The trial court instructed the jury on how to weigh the evidence the parties presented, *see* N.T., 12/21/09, at 174-80, and Appellant cites no authority that further instructions were necessary with respect to the firearm the police recovered from his apartment.

Second, as discussed above, there was overwhelming evidence of Appellant's guilt, as three eyewitnesses testified at trial to having seen Appellant shoot and kill Adams. *See* N.T., 11/30/09, at 141-42, 148-49, 154; N.T., 12/1/09, 35-36, 53-54; N.T., 12/2/09, 123, 126-29. It is far more likely that the jury's verdict was the result of the three eyewitnesses having observed Appellant shoot and kill Adams (two of whom later heard Appellant boasting about killing Adams), as opposed to police recovering a firearm from Appellant's home six months after the shooting. Accordingly, because Appellant's second issue fails to satisfy either the arguable merit or prejudice prongs of the ineffective assistance of counsel test, the trial court did not abuse its discretion in denying this claim. *See Wholaver*, 177 A.3d at 144.

For his third issue, Appellant argues that PCRA Counsel was ineffective for failing to raise a claim that Trial Counsel was ineffective for not requesting an instruction indicating that drug use "weakens witness observation and memory." Appellant's Brief at 23. Appellant asserts that such instruction was necessary because Ramos and Wilson indicated at trial that they used drugs on the night of the murder.

Appellant's third issue is waived. In his appellate brief, Appellant fails to develop this claim within the constructs of the ineffective assistance of counsel test. Instead, Appellant makes vague and bald assertions that Trial Counsel should have requested an instruction relating to witness observations and drug use. As this Court has repeatedly explained,

> When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. **Commonwealth v. Gould**, 912 A.2d 869, 873 (Pa. Super. 2006). The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. **Id.**; Pa.R.A.P. 2119(a), (b), (c). Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).
>
> This Court will not act as counsel and will not develop arguments on behalf of an appellant. **Gould**, 912 A.2d at 873. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. **Id.**; Pa.R.A.P. 2101.

**Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007). Because Appellant has failed to sufficiently develop his third issue for our review, it is waived. **See id.**

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/20

- 9 -