J-S47020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN CHARLES BIRCHALL | : | |
| | : | |
| Appellant | : | No. 1531 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 3, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000427-2023

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 21, 2025**

John Charles Birchall appeals from the judgment of sentence entered after he was convicted of charges related to two bank robberies.[1] Birchall challenges the trial court's discretion in denying his motion to sever the cases for trial and in imposing an aggregate ten-to-twenty-year sentence. We affirm.

Birchall robbed two banks in the same shopping center in July of 2022. The first robbery was at the Wells Fargo bank in the Bala Cynwyd Shopping Center at 10:45 a.m. on July 1, 2022. Birchall wore a red shirt, light-colored shorts, a light blue hat, black sunglasses, a black mask, and black flip-flop

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii) (robbery by threat of immediate serious bodily injury, two counts), 3701(a)(1)(vi) (robbery of a financial institution, two counts), 3921(a) (theft by unlawful taking or disposition), 3925(a) (receiving stolen property), 2706(a)(1) (terroristic threats, two counts), 2701(a)(3) (simple assault, two counts)

slides with no socks. He approached a teller and said, "Give me all the hundreds and twenties." The teller initially thought Birchall was joking and asked him for his bank card to access his account. Birchall replied, "No, I don't think you understand. I'm robbing you." The teller asked if he was serious, and he again stated that he was robbing her. Birchall reached for his waist and asked if the teller wanted to put everyone's life in jeopardy. The teller beckoned for her supervisor, Birchall explained that he was robbing the teller, and again demanded money. After a customer indicated that Birchall had a gun, Birchall said, "I'll be back for you," and left. Birchall walked to a bathroom in the nearby Acme market, where earlier he had left a backpack with a black shirt and dark pants. Birchall changed and walked to the parking lot at 10:51 a.m. At 10:58 a.m., a responding police officer asked the dark-clad Birchall if he had seen the robber. Birchall said no.

The second robbery was at the WSFS Bank in the same shopping center at 10:50 a.m. on July 9, 2022. Birchall wore a bright yellow shirt, a pink hat, sunglasses, a black face mask, and black shoes. He told the two employees at the teller window, "as long as you guys listen, you'll make it out alive." He demanded: "Give me the money. This is a robbery. I want hundreds, fifties and twenties. I don't want any bait." Meanwhile, Birchall aimed a gray canvas bag, presumably with a gun, at the employees. The employees complied with Birchall's demands and placed money on the counter. Birchall took the money and told the employees to go to the back room and count to fifty. Birchall left. In the back room, the employees used a silent alarm to alert the police.

Police responded within minutes and obtained descriptions of the robber that matched the first robbery. Although officers did not find the suspect in the Acme market, surveillance footage showed Birchall entering the Acme market at 10:00 a.m. and lingering on a bench outside until just before the second robbery. Footage also showed Birchall in a landscaped area outside the WSFS Bank before and after the robbery. Video showed at 10:51 a.m., Birchall changed clothes in the landscaped area, then walked toward the Acme market to be picked up in a white minivan. Police searched the landscaped area and found a mask and a gray canvas bag, containing a sneaker. Forensic testing of the mask identified a DNA profile that matched Birchall. Further analysis confirmed that Birchall's DNA matched the DNA from the mask.

On December 7, 2022, police charged Birchall in connection with both robberies. Birchall filed a motion for separate trials, and the Commonwealth filed an answer. The trial court heard and denied Birchall's motion on October 9, 2023. The court reasoned that evidence about either robbery would be admissible at a trial for the other robbery as proof of Birchall's identity.

The case immediately proceeded to a jury trial from October 9 through 11, 2023. The jury found Birchall guilty of the above crimes.

On January 3, 2024, Birchall appeared for sentencing. The trial court reviewed the record and provided an extensive explanation of its reasons for imposing its sentence. For both counts of robbery by threat of immediate serious bodily injury, the court sentenced Birchall to standard-range terms of five to ten years of imprisonment. The court ordered the sentences to run

consecutively, resulting in an aggregate sentence of ten to twenty years of imprisonment. Birchall received no further sentence on the other robbery counts, and the parties agreed that the remaining counts would merge.

Birchall filed a *pro se* post-sentence motion and an amended post-sentence motion *nunc pro tunc* through counsel. The trial court denied the post-sentence motion. Birchall timely appealed. Birchall and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Birchall presents two questions for review:

1. Whether the Trial Court erred in denying [Birchall's] Motion for Separate Trials of Charges (*i.e.*, Motion for Severance of Offenses).

2. Whether [Birchall's] sentence was unduly harsh, excessive, unreasonable, an abuse of discretion and contrary to the fundamental norms of sentencing and the sentencing guidelines.

Birchall's Brief at 5–6.

First, Birchall challenges the denial of his motion for separate trials. He argues that the trial court erred in determining that evidence of one robbery would be admissible in a trial for the other robbery, as they were not so similar as to be a "signature crime." Birchall contends that the denial of severance prejudiced him, as the evidence that he was the perpetrator of the Wells Fargo robbery was weak. He submits that the jury convicted him of that crime only because of propensity evidence from the WSFS Bank robbery.

This Court reviews a ruling on a motion for separate trials mindful of the trial court's sound discretion, and we will reverse only for "a manifest abuse

thereof, or prejudice and clear injustice to the defendant." ***Commonwealth v. Hobel***, 275 A.3d 1049, 1067 (Pa. Super. 2022). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Commonwealth v. Christine***, 125 A.3d 394, 397 (Pa. 2015).

Generally, the law encourages the joinder of offenses at trial for judicial economy. ***Hobel***, 275 A.3d at 1067. By rule, separately charged offenses may be tried together if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a). A trial court may sever offenses for trial "if it appears that any party may be prejudiced by offenses . . . being tried together." Pa.R.Crim.P. 583. Prejudice under Rule 583 "must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." ***Hobel***, 275 A.3d at 1067. To prove such prejudice, an appellant must demonstrate that the evidence showed only his propensity to commit crimes, that the jury could not separate the evidence of separate incidents, or that the jury could not avoid cumulating the evidence. ***Id.***

Where the offenses charged were not based on the same act or transaction, courts address three inquiries in ruling on severance:

[1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Id.* (quoting *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997)).

Like the main issue of severance, the related issue of the admissibility of evidence "rests within the sound discretion of the trial court." *Christine*, 125 A.3d at 397. Notably, the Pennsylvania Rules of Evidence prohibit the use of evidence that a person committed a crime to prove his character "to show that on a particular occasion the person acted in accordance with the character" by committing another crime. Pa.R.E. 404(b)(1). However, this evidence "may be admissible for another purpose," including proof of identity. Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

A trial court performs a fact-intensive analysis to determine whether evidence of a defendant's other crimes is admissible to prove his identity under a theory of a "common plan." *Commonwealth v Green*, 271 A.3d 393, 402 (Pa. Super. 2021). To establish a defendant's identity as the person who committed one crime, this line of reasoning requires the other crime to be "so similar that logically the same person committed both acts." *Id.* (citing *Commonwealth v. Rush*, 646 A.2d 557, 561 (Pa. 1994)). A court considers the patterns of action of the crimes as well as the "time, place, and types of

victims typically chosen by the perpetrator." ***Commonwealth v. Tyson***, 119 A.3d 353, 359 (Pa. Super. 2015) (*en banc*).

Here, the trial court initially determined that evidence from the WSFS robbery would be admissible at a trial for the Wells Fargo robbery (and *vice versa*) as proof of Birchall's identity. The court noted numerous similarities between the two crimes, in which Birchall wore bright clothes and a mask, announced that "this is a robbery," demanded specific denominations of bills, changed clothes to avoid detection, and lingered in the nearby Acme market. Furthermore, the court observed that the robberies were committed at the same time of day eight days apart, in two banks in the same shopping center. The trial court recognized that the evidence of each robbery would be used for legitimate purposes, rather than to portray Birchall as someone with a criminal character. Therefore, the trial court did not abuse its discretion in determining that evidence of each of the robberies would be admissible in a separate trial for the other.

Likewise, the trial court acted within its discretion in assessing the ability of the jury to separate the evidence and avoid confusion, and in determining that Birchall would not be unfairly prejudiced by the denial of his motion for separate trials. As the court observed, the jury could distinguish the evidence of crimes committed eight days apart. Because the trial court was within its discretion to rule that evidence from the second robbery would be admissible to prove Birchall's identity in the first robbery, there is no unfair prejudice within Rule 583. ***Hobel***, 275 A.3d at 1067. Because the evidence from the

second robbery would be properly used to show Birchall's identity, rather than his criminal character, the trial court did not abuse its discretion when it denied Birchall's motion for separate trials. Birchall's first issue fails.

Second, Birchall challenges the discretionary aspects of his sentence. He argues the trial court failed to consider certain mitigating factors, such as his advanced age, his mother having abandoned him, his victimization while serving in the military, and his drug addiction that was a motive for robbery.

As a threshold matter, we must determine whether Birchall preserved this issue for review. This Court may review the discretionary aspects of a sentence "where it appears that there is a substantial question that the sentence imposed is not appropriate under" the Sentencing Code. 42 Pa.C.S. § 9781(b). In determining whether to grant an appeal of the discretionary aspects of sentence, we address four inquiries:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Pisarchuk*, 306 A.3d 872, 878 (Pa. Super. 2023).

Here, Birchall met the first three requirements. He filed a timely appeal, objected to the discretionary aspects of his consecutive sentences in a post-sentence motion, and included a Rule 2119(f) statement in his brief. Further, Birchall presented a substantial question by challenging his sentences as excessive, combined with a claim that the trial court failed to consider certain

mitigating factors. ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa.

Super. 2015) (*en banc*). Therefore, we consider the merits of Birchall's issue.

Birchall contends that the trial court did not consider his listed mitigating

factors. We review this claim to determine whether the trial court abused its

discretion. ***Id.***

Here, the court articulated why, considering everything about Birchall,

it imposed two standard-range sentences for the robberies:

> In determining sentence in this case, the Court has considered a great deal of information, and the record should reflect that. I presided over the trial. I personally had the opportunity to hear all of the witnesses, in particular the victims, testify about how these crimes impacted them and to hear about the terror they endured. I certainly heard about the investigation and how it was conducted.
>
> I had the benefit of the presentence investigation and the PPI, and I've considered them. I have absolutely considered the sentencing guidelines. I've considered the information presented in court today, the victim impact statement, the arguments of counsel, and of course I've considered Mr. Birchall's statement to the Court.
>
> Perhaps, most pointedly, I've considered the outstanding sentencing memorandum . . . provided by Ms. Harbison of the Public Defender's Office, and I must commend her. It . . . certainly provides a tragic history for this Court and there can be no doubt that Mr. Birchall at the age of 65 has had a tragic life; in his words a "train wreck." His is a life of crime, and addiction, and abuse that has not stopped other than for periods of incarceration— forced to stop.
>
> I need not review the defendant's prior history of convictions, as it was already done by the Assistant District Attorney, but the one thing aside from the convictions that she did not mention and I think bears mentioning is the fact that in addition to the many, many convictions and many sentences, there were multiple violations of supervision over the years,

repeated violations. So the defendant was given opportunities for probation, violated probation, and was incarcerated.

He was incarcerated fairly consistently in county prisons for a period of time, and then eventually graduated, I'd like to say, to state prison. He spent a good deal of his adult life in prison, both in county prisons and state prisons. He has traveled all across this country committing crimes, nothing has stopped. One might expect, or think, or hope that as one ages, the crimes become less violent or less intrusive of other people, and unfortunately here we have the opposite. Shoplifting, and retail theft, and providing false names have given way to these two very serious, violent offenses, these two bank robberies, that terrorized individuals.

This Court heard from the tellers who were the victims, but there can be no doubt that in each of these financial institutions there were multiple people present. Seeing the videos of the crimes was pretty horrifying in the way the . . . members of the public who were exposed to this reacted. One could see terror in so many faces and people running to get to the door not knowing what was going to happen. So this Court cannot minimize the significance of these offenses here, and the fact that they were committed by a man in his sixties suggests to me that protection of the public is just as important now, today, [as] it would have been with a younger person committing these crimes because age has not deterred him, age has not stopped him.

This Court has considered the nature and circumstances of these crimes and this Court has considered fully the history of the defendant, his character, and his condition, and it is the Court's opinion, of course, that total confinement is necessary because there is unfortunately undue risk that the defendant would, in fact, commit another crime if he were released. There is a need to protect the public. The defendant is in need of correctional treatment that can best be offered by the state correctional system, and any lesser sentence would depreciate the seriousness of these crimes before the Court.

I will impose sentences in the standard range of the guidelines, as I believe that is what is appropriate here. Because there are two separate offenses, two separate robberies, on two separate dates terrorizing multiple separate individuals, the sentences will be imposed consecutively as I believe they need to be.

N.T., Sentencing, 1/3/24, at 29–32.

The trial court's thorough explanation of its reasoning shows it considered Birchall's age, past abandonment and victimization, and addiction in crafting an appropriate sentence. Therefore, we conclude that the trial court acted within its discretion in imposing sentence. Birchall's second issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/21/2025